Belknap, }
June, 1895. }

WINNIPISEOGEE LAKE COTTON AND WOOLEN MFG. Co., *Ap'ts*,
*v.* LACONIA.

A judgment on appeal from the selectmen's refusal to abate taxes is conclu-
sive evidence of the value of the property assessed at the time of the
assessment, in an appeal by the owner from the refusal to abate taxes sub-
sequently assessed on the same property.

APPEAL, from the decision of the selectmen refusing to abate
taxes assessed upon the plaintiffs' property in April, 1893.  The
plaintiffs offered in evidence the judgment rendered at the March
term, 1894, in their appeal from the refusal of the selectmen to
abate taxes assessed on the same property in 1892.  The question
of the competency and effect of the judgment is reserved.

*E. A. & C. B. Hibbard*, for the plaintiffs.

*Frank N. Parsons* (with whom was *Stephen S. Jewett*), for the
defendants.  The proceeding is a petition under P. S., c. 59, s.
11, for abatement of taxes assessed against the plaintiffs in 1893
and 1894.  The issue presented is at what sum the plaintiffs'
property should be appraised in comparison with the appraisal
of all other property in the city in order that the petitioners may
bear their share of the public burden of taxation.  *Bank* v. *Pe-
terborough*, 56 N. H. 38.

The plaintiffs offer a judgment in similar proceedings against
the town of Gilford in previous years, in which the value of the
plaintiffs' real estate embraced in those proceedings in 1890,
1891, and 1892 was determined.

Is this judgment admissible?  If a judgment, this is a judg-
ment of a high court of assessment, but of no more force and
with no greater solemnity attached to it than that of the inferior
court unappealed from.  *Salisbury* v. *County*, 59 N. H. 359, 362.
The assessors in making their appraisal act as a court.  *Boody*
v. *Watson*, 64 N. H. 162.  Their duty is prescribed by statute.
P. S., c. 58, s. 1.  "The selectmen shall appraise all taxable
property at its full and true value in money as they would ap-
praise the same in payment of a just debt due from a solvent
debtor."  This was the duty of the lower court whose action is
now sought to be reversed: to appraise the plaintiffs' property
at its full and true value in money.  It was their duty upon all
the evidence procurable by them, including perhaps the opinion
of the court of what it was worth the year before, if brought to

their attention, to appraise this property at what they honestly thought its market value. If the plaintiffs' contention is correct, the judgment offered in evidence should have had equal effect in the lower court and the appraisal should have been made, not at what the appraisers thought the property worth, but at what they were told the court thought it worth. This would have been a violation of their official oaths and a surrender of their functions as a court of original jurisdiction. To do this cannot be their duty, and the evidence offered cannot be of greater effect in the court above than in the court below. If they were bound to give this effect to the assessment of the court upon the appeal, they would be bound to give the same effect to an assessment of a previous board unappealed from. The result of this contention is that an erroneous assessment in any one year by an ignorant or a corrupt board, when there is clearly no change in value, could never be corrected if too low.

While it might be held that a taxpayer who did not appeal was estopped to deny that the value of his property was different from that determined by the assessment court, or that one who did appeal and obtain a judgment was estopped to assert its value to be different from its adjudicated value, such estoppel does not apply to the defendants. For an assessment erroneously high a remedy by petition for abatement is provided the taxpayer. P. S., c. 59, ss. 10, 11. For an assessment erroneously low, Boody v. Watson points the way for some other taxpayer aggrieved by the low appraisal given his neighbor, but the entire body of taxpayers have a more convenient remedy in the election of a more honest or more intelligent assessment court. While it is expressly provided as stated, that selectmen shall assess all property at its true value in money, the statute also provides (P. S., c. 58, s. 7) that "The assessors and selectmen shall, in the month of April in each year, examine all the real estate in their respective cities and towns, shall reappraise all such real estate as has changed in value in the year next preceding, and shall correct all errors that they find in the then existing appraisal." The contention of the plaintiffs would strike from the statute the last clause of this section.

The decision of the court upon the tax of 1892 wrote into the appraisal for that year as the taxable value of the plaintiffs' property for that year, the sum found by the court. When the board of assessors, whose action we are now considering, came to make their assessment for 1893 and 1894, they had the power, and it was their duty, to consider and pass upon two questions: (1) Has this property changed in value during the preceding year? (2) Are there errors in the appraisal as it now stands? Upon one ground or the other they found the value of the plaintiffs' property to be different from what the court found it to be.

The question in this proceeding is, were they correct on either ground? Whatever questions were open in the lower court are open here.

The judgment rendered was conclusive upon all questions submitted for the purpose for which it was rendered, and in any action growing out of that judgment we admit it is conclusive,— that is, not open to examination for the detection of errors. As a basis for the assessment for a succeeding year it is not conclusive,— is open to examination for the detection of errors,— because the statute has expressly made it subject to such examination. It seems to us unnecessary to go into an examination of authorities and a discussion of the law as to the effect of judgments generally in the face of the statutory provision limiting the effect of this one and expressly opening it to inquiry. The court cannot seriously contemplate the abrogation of the convenient statutory remedy for the prevention of the continuance of an erroneous assessment in the hands of the whole body of taxpayers by the election of officials competent and honest enough to correct an erroneous assessment, specifically provided by statute, and leave the only remedy the cumbrous proceeding by a single taxpayer suggested in *Boody* v. *Watson.*

Our position is that the appraisal of the plaintiffs' property by the supreme court of assessment upon appeal, for taxation in 1892, is of precisely the same effect upon the appraisal in 1893 as an appraisal by the lower court in 1892 unappealed from.

But the issue in this proceeding was not the issue in the judgment rendered. That judgment at most established the value of the plaintiffs' property in 1892. The question now is, what was its value in 1893 and 1894? Even if the value in 1892 is conclusively established, that fact does not conclusively establish its value in 1893 and 1894. Upon the question whether a change has taken place, the only rational method is to determine its value in 1893, and thereby demonstrate the fact of change. The opinion rendered and the case reserved show this is precisely what was done in that case. There it was claimed that a judgment conclusively established the value of the plaintiffs' property in April, 1884, to be $275,000. Upon evidence it was found that the value in 1890, 1891, and 1892 was $85,000, and that the value of the plaintiffs' property had changed to that extent. Without expressly repealing the statute, it cannot be held that the selectmen's assessment, unappealed from, is conclusive upon their successors in office. No legal or logical reason can be given why the judgment of the appellate court should extend farther than the judgment from which the appeal is taken, in the absence of express statutory provision to that effect.

The judgment appealed from is right or it is wrong. If the appellate court agrees with the inferior, the judgment is sustained, but it is not any stronger or more extensive than it was before. It is suggested that unless such a judgment be conclusive, the matter is open to litigation every year. The answer is that such is the decree of the legislature. The legislature might have decreed that a reappraisal of real property should be made once in ten years; and, within reasonable bounds, the frequency of such readjustment of existing taxing values is within legislative power. The legislature has decreed that there should be a new appraisal the first day of every April, that such appraisal should be made by the selectmen each year, subject to correction each year by appeal to the court. It might have been wiser to provide that such reappraisal should be made only once in two, four, or ten years, but it is not for the court, in view of the legislative provision for annual reappraisal *de novo*, to enact that an appraisal made by it shall be forever conclusive.

The defendants' suggestions as to the character of the inferior tribunal, its method of procedure, and the possible interest of its members, do not bear upon the question. Such considerations can only bear upon the weight to be attached to the judicial determinations of such a court as matter of authority, and are merely reasons for the existence of the right of appeal.

The change in the value of real estate is often slow. Looking back over a term of years, a change in value is often clear, while the particular change in any one year might be very difficult to determine. Hence the legislature has provided that whenever, regardless of previous appraisal, the error becomes apparent, the correction shall be made; while, if the plaintiff is correct, an appeal and judgment each year agreeing with the foregoing would forever deny justice, although it might be clear that since the value complained of was first found there had been a substantial change.

CARPENTER, J. The chief object of the present proceeding is to obtain a judicial determination of the fair market value of the plaintiffs' property on the first day of April, 1893. Upon that question the value of the same property on the first day of April, 1892, is competent evidence. Ordinarily it would be quite as difficult — would require as extensive and expensive investigation — to determine its value on that day as upon the day in question. The right to show the value in 1892 would be of no value to either party unless it has been in some way ascertained. But if it were established, as for example, by agreement, the field of investigation would be much narrowed and

the cost of the trial greatly diminished. It would be the value in 1893, except in so far as the property may have increased or decreased in value during the year. On the trial, the inquiry would be restricted to the question of the alterations of value during that period and their extent.

Upon the plaintiffs' petition, the value of the property on the first day of April, 1892, was judicially found and declared by a judgment rendered by this court in due course of law. The parties had the opportunity to present, and must be presumed to have presented, all their evidence on the question and were fully heard. No sufficient reason has been suggested or is perceived for denying to the judgment the same conclusive effect upon the question adjudicated that by law appertains to judgments in other cases.

Whether the appraisal by selectmen or assessors not appealed from is conclusive for any purpose except as the basis for the assessment of taxes for the current year, is a question that need not be considered. Assuming that their appraisal is not conclusive on their successors in office, it does not follow that the judgment of the court upon an appeal from their determination is equally inconclusive. An appeal does not necessarily carry with it to the appellate court the infirmities, whatever they may be, of the subordinate tribunal. So long as the court has jurisdiction of the subject-matter and of the parties, the method by which the cause or question is brought before it — whether by appeal or otherwise — cannot be material to the effect of its judgment.

The assessors are required to appraise property for taxation at its fair market value. *Cocheco Co.* v. *Strafford*, 51 N. H. 455, 481, 482. In discharging this duty they must necessarily in most cases act on their own judgment. *Hayes* v. *Hanson*, 12 N. H. 284, 289. But neither the law nor their oath requires them to exercise their judgment in defiance of the law of the land. If the value of land or other property is legally established, to appraise it at a different value would be a violation of law and of their oath, whatever might be their personal opinion on the subject.

The act of July 18, 1876 (P. S., *c.* 58, *s.* 7), providing that the assessors and selectmen shall, in the month of April in each year, examine all the real estate in their respective cities and towns, shall reappraise all such real estate as has changed in value in the year next preceding, and shall correct all errors that they find in the then existing appraisal, has no relation or application to the present question. It has become a common practice of selectmen to set down in the invoice real estate at the same value year after year, without examination or inquiry, overlooking, it might be, valuable improvements. *Dewey* v. *Strat-*

*ford*, 42 N. H. 282, 288. The object of the statute (as well as that of the second section of the act of July 10, 1874, repealed by it) was to correct this mischief. The " then existing appraisal" intended is the appraisal made by the last preceding board of assessors, and not the valuation established by a judgment.

The judgment is conclusive evidence of the value of the property on the first day of April, 1892, and a bar to any investigation of its value on or before that day by the assessors or before the court. *McConologue's Case*, 107 Mass. 154, 170, 171, and cases cited.

*Case discharged.*

PARSONS, J., did not sit: the others concurred.