THE EVERGREENS v. NUNAN, Commissioner of Internal Revenue.

No. 127.

Circuit Court of Appeals, Second Circuit.

April 3, 1944.

Neilson Olcott, Valentine B. Havens, and Charles B. McInnis, all of New York City (Jerome Weinstein and J. D. Graves, both of New York City, of counsel), for petitioner.

Howard P. Locke, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up upon a petition to review an order of the Tax Court, assessing deficiencies in income tax against the taxpayer for the years 1934 and 1935. The taxpayer is a cemetery company doing business in Brooklyn, in the course of which it sells burial lots. The question at issue is its "gains," (§ 111(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Code, § 111(a), upon the disposition of a part of its property during the two years in question; and that in turn depends upon the "basis" which it shall be permitted to deduct from the "amount realized": that "basis" being the value on March 1, 1913, of the property disposed of. § 113(a) (14), 26 U.S.C.A. Int.Rev.Code, § 113(a) (14). The company's property was of two classes: "fully improved" lots, and "partially improved." During the years 1934 and 1935 it sold a number of "fully improved" lots, and the City of New York took over for municipal purposes a large tract, composed of "partially improved" lots. This appeal concerns only the second. The Tax Court allowed, as the "basis" for the sale of the "fully improved" lots, $1.55 per square foot, and, as the "basis" for the "partially improved" lots, $.35 per square foot. It held, as to the value of the "fully improved" lots, that the Commissioner was estopped by a finding of the Board of Tax Appeals in an earlier proceeding, in which the company's income taxes for the years 1929 to 1933, inclusive, had been assessed. The Commissioner raises no question as to the correctness of this finding, and has not appealed. The Tax Court refused, however, to compute a "basis" for the "partial-

ly improved" lots by deducting from the "basis" of the "fully improved" lots, as found by the Board, the cost of fully improving the "partially improved" lots, which the Board had also found in the first proceeding. The Tax Court altogether disregarded the "basis" of the "fully improved" lots as the Board had found it, and proceeded to appraise the value of the "partially improved" lots from evidence taken in this proceeding. The taxpayer's position is that the Board's order in the first proceeding, not only estopped the Commissioner as to the value of the "fully improved" lots, but conclusively established that value as an indisputable premise from which, by deducting the cost of the improvements to infer the value of the "partially improved" lots. The taxpayer also asserts that the value of the "partially improved" lots was found in the first proceeding as a necessary step in finding the value of the "fully improved" lots, and in this the dissenting minority of the Tax Court agreed. However, nothing in the record of the first proceeding bears this out; so far as appears, the Board did not first find the value of the "partially improved" lots and then add the cost of improvement. The sole basis for the assumption that it fixed any value for the "partially improved" lots is that, in calculating the value of the "fully improved" lots, it considered as one element the delay necessarily incident to the disposition of all the taxpayer's lots. That is an altogether different matter from fixing the value of those lots as a step from which to proceed to the value of the "fully improved." Again, although it is true that the Board found that the cost of improving the lots was from eight to twenty cents a square foot, that was not necessary to determining the value of the "fully improved" lots, and is not an estoppel. Finally, the taxpayer apparently also asserts that the evidence in this proceeding was not enough independently to support the Tax Court's finding as to the value of the "partially improved" lots, but the testimony of the expert witnesses upon that issue is an answer to this position.

█ It is of course well-settled law that a fact, once decided in an earlier suit, is conclusively established between the parties in any later suit, provided it was necessary to the result in the first suit. Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355; Tait, Collector, v. Western Maryland R. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405. However, a "fact" may be of two kinds. It may be one of those facts, upon whose combined occurrence the law raises the duty, or the right, in question; or it may be a fact, from whose existence may be rationally inferred the existence of one of the facts upon whose combined occurrence the law raises the duty, or the right. The first kind of fact we shall for convenience call an "ultimate" fact; the second, a "mediate datum." "Ultimate" facts are those which the law makes the occasion for imposing its sanctions.

█ The first question is whether, in ascertaining which facts, of those decided in the first suit, are conclusively established, the court in the second suit may go beyond the judgment roll. It has been long the law that it can. Young v. Black, 7 Cranch 565, 3 L.Ed. 440; Doty v. Brown, 4 N.Y. 71, 75, 53 Am.Dec. 350; King v. Chase, 15 N.H. 9, 41 Am.Dec. 675. The next question is whether, after the court in the second suit has learned what the court in the first suit actually did decide, the judgment conclusively establishes for any purpose any other facts than those which were "ultimate" in the first suit; that is to say, whether any facts decided in the first which were only "mediate data" in that suit, are conclusively established in the second suit. Some courts hold that only facts "ultimate" in the first suit are conclusively established. King v. Chase, supra, 15 N.H. 9, 41 Am.Dec. 675; Winnipiseogee Lake Cotton & Woolen Manufacturing Co. v. Laconia, 74 N.H. 82, 65 A. 378; Campbell v. Milliken, 20 Colo.App. 299, 78 P. 620; Sullivan Machinery Co. v. Stowell, 80 N.H. 158, 114 A. 873; Louisville Gas Co. v. Kentucky Heating Co., 132 Ky. 435, 111 S.W. 374. (People ex rel. McCanliss v. McCanliss, 255 N.Y. 456, 459, 175 N.E. 129, 82 A.L.R. 1141, may possibly be in line with these.) The same notion was foreshadowed in the often quoted language of Coke: "Every estoppel * * * must be certain to every intent, and not to be taken by argument or inference." Co. Lit. 352b. DeGrey, C. J., probably had the same idea in mind in the Duchess of Kingston's Case: "But neither the judgment * * * is evidence of any matter which came collaterally in question * * * nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment." Smith's

Leading Cas. 424, 9th Am. ed. 1998, 20 How. St. Tr. (Eng.) 355. On the other hand, other courts refuse to distinguish between "ultimate" facts and "mediate data" decided in the first suit, so long as they were necessary to the result. Wright v. Griffey, 147 Ill. 496, 35 N.E. 732, 37 Am. St.Rep. 228; Farmers' & Fruit-Growers' Bank v. Davis, 93 Or. 655, 184 P. 275; Dobbins v. Title Guarantee & Trust Co., 22 Cal.2d 64, 136 P.2d 572. We read Freeman on Judgments, § 693, as in accord with these cases. We need not choose between these two doctrines, because, as we have seen, the Board decided nothing in the first proceedings which was both a "mediate datum" in that proceeding and necessary to the result.

The important question here is not therefore whether "mediate data" in the first suit are as conclusively established as "ultimate" facts in that suit. On the contrary, we are to decide what are the purposes in the second suit for which anything decided in the first suit—whether "ultimate facts", or "mediate data" therein—are conclusively established. Do the "ultimate" facts, or the "mediate data" decided in the first suit conclusively establish in the second, anything but facts "ultimate" in that suit? Do they also establish "mediate data" in that suit: i.e. premises from which to deduce the existence of any of the facts "ultimate" in that suit?

It is, as we have said, a condition upon the conclusive establishing of any fact that its decision should have been necessary to the result in the first suit. That is a protection, for it means that the issue will be really disputed and that the loser will have put out his best efforts. It can make no difference in this regard whether the original issue was as to an "ultimate" fact or as to a "mediate datum"; the parties can have no interest in what place in the logical hierarchy the issue occupies, if only the final outcome hinges upon it. Altogether different considerations should determine whether any sort of fact, decided in the first suit, should conclusively establish "mediate data" in the second suit. Indeed, it often works very harshly inexorably to make a fact decided in the first suit conclusively establish even a fact "ultimate" in the second. The stake in the first suit may have been too small to justify great trouble and expense in its prosecution or defense; and the chance that a fact decided in it,

even though necessary to its result, may later become important between the parties may have been extremely remote. It is altogether right that the judgment shall forever put an end to the first cause of action; but it is not plain that it is always fair that every fact—"ultimate" or "mediate datum" —decided in it, shall be conclusively established between the parties in all future suits, just because the decision was necessary to the result. What jural relevance facts may acquire in the future it is often impossible even remotely to anticipate. Were the law to be recast, it would therefore be a pertinent inquiry whether the conclusiveness, even as to facts "ultimate" in the second suit, of facts decided in the first, might not properly be limited to future controversies which could be thought reasonably in prospect when the first suit was tried. That is of course not the law as it stands; but if it be proposed to make any fact, decided in the first suit, an indisputable datum in the second, from which the winner may make all rational inferences, the loser's risks become enormously enlarged. It is difficult enough to know to what other possible causes of action a fact found in the first suit will later prove to be "ultimate"; but the field is at least somewhat restricted, particularly because the causes of action to which it can apply are apt to be already in existence. But is is utterly impossible to set even the widest boundaries to the situations in which facts found in the first suit may become relevant as data from which to deduce any facts, "ultimate" in all possible future causes of action. Logical relevance is of infinite possibility; there is no conceivable limit which can be put to it. Defeat in one suit might entail results beyond all calculation by either party; a trivial controversy might bring utter disaster in its train. There is no reason for subjecting the loser to such extravagant hazards; unless the decisions compel us to go so far, we will not do so.

We have been able to find very little authority upon the point; most of the discussion has been as to whether "mediate data," decided in the first suit, finally establish facts "ultimate" in the second. However, Winnipiseogee Lake Cotton & Woolen Manufacturing Co. v. Laconia, 1895, 68 N.H. 284, 35 A. 252, appears to have been in accord with the taxpayer's position here. It concerned taxes, and the issue was as to the fair market value of the taxpayer's

930

property for the year 1893. In the year 1892 the value of this property had been ·fixed in an earlier tax proceeding, and the court used the value then found as an indisputable datum from which to infer the value for the following year, just as the taxpayer in the case at bar seeks to use the value of the "wholly improved" lots, as fixed by the Board. But that decision was specifically overruled eleven years later in Winnipiseogee Lake Cotton & Woolen Manufacturing Co. v. Laconia, supra, 74 N.H. 82, 65 A. 378, where the court reverted to the doctrine of King v. Chase, supra, 15 N.H. 9, 41 Am.Dec. 675, that a judgment conclusively establishes only facts in "issue" in the first cause of action; and where it held that the value of the property in 1892 had not been an "issue" in the first suit. The taxpayer relies upon Bedford v. Cowtan & Sons, Ltd., C. A., [1916] 1 K.B. 980, in which a question arose in a compensation case as to whether a workman's incapacity had been due to lead poisoning. A medical officer had so certified, and it was agreed that up to the time when the certificate issued, this was conclusive, for the statute expressly made it so. A majority of the Court of Appeal held that it necessarily followed that the workman suffered from lead poisoning during the period after the certificate, and not, as the employer maintained, from Parkinson's disease. They reasoned that, if he had suffered from lead poisoning up to the time of the certificate, his disease could not have turned into Parkinson's disease thereafter. The situation there before the court was, however, quite different from that before us. The medical certificate was not given in a separate proceeding, as we understand it; it was to be treated as a step in the compensation case itself. When the statute declared that it should be conclusive, that meant that it should be conclusive for all purposes in that proceeding. Even as it was, Phillimore, J., dissented upon the ground that the certificate could not properly be used as an indisputable datum for the later period; adopting, as we read his opinion, the distinction which we are now making.

On the other hand we have not been able to find any case which holds that facts— "ultimate" or "mediate data"—decided in the first suit, may not be used as indisputable "mediate data" in the second. The statement from Coke could not have had that situation in mind; indeed, as we have said, at the time it was made, the meaning presumably was that the question must be determined from the judgment roll alone. Theoretically it might have been thought possible that the winner in the first suit could use any fact determined from the roll as "mediate data" in the second; yet that is most unlikely either then, or when the Duchess of Kingston's Case, supra, was decided. The notion that a jury should be instructed that they might use facts appearing in a judgment roll, as mere evidence in their deliberations would certainly have been foreign to legal notions of those periods. Indeed, we have seen that it has not even yet become wholly settled whether facts decided in the first suit, and therein only "mediate data", conclusively establish facts "ultimate" in the second. The Restatement of Judgments (§ 68, Comment p., Illustration 14) which we quote in the margin[1] apparently meant to state the more restricted position, leaving open the question here at issue: i.e. whether facts decided in the first suit, even though "ultimate" in that suit, may be used as indisputable "mediate data" in the second. In the Illustration the fact decided in the first suit was a "mediate datum" in both suits: possibly, if it had been "ultimate" in the first, the result would have been different.

■ Thus, there is a dearth of authority upon the question. The truth appears to be that, so far as we can find, the courts have not had it clearly presented to them, as it is presented to us in the case at bar. Being free to decide, and for the reasons we have given, we do not hesitate to hold

[1] "Evidentiary facts. The rules stated in this Section are applicable to the determination of facts in issue, but not to the determination of merely evidentiary facts, even though the determination of the facts in issue is dependent upon the determination of the evidentiary facts."

"Illustration: 14. A brings an action against B for breach of contract. B denies that he made the alleged contract. At the trial A testifies that on a certain day B signed the contract in New York. C testifies that he saw B in London on that day. Verdict and judgment for B. Thereafter A brings an action against B alleging that B assaulted A on the same day in New York. The judgment in the prior action does not preclude A from proving that B was in New York on the day in question."

that, even assuming arguendo that "mediate data," decided in the first suit, conclusively establish facts, "ultimate" in the second, no fact decided in the first whether "ultimate" or a "mediate datum," conclusively establishes any "mediate datum" in the second, or anything except a fact "ultimate" in that suit.

Order affirmed.