Harley ALEXANDER and Maude Alexander, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15307.

United States Court of Appeals Fifth Circuit.

Aug. 2, 1955.

Arthur Glover, Amarillo, Tex., for petitioners.

Frank E. A. Sander, Ellis N. Slack, Carolyn R. Just, Sp. Assts. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Washington, D. C., Daniel A. Taylor, Chief Counsel Int. Rev. Serv., Chicago, Ill., John M. Morawski, Sp. Atty. Int. Rev. Serv., Washington, D. C., for respondent.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

Harley Alexander, who will be herein called the taxpayer, and Maude Alexander, husband and wife, filed joint income tax returns for the years 1943 and 1944. The Commissioner of Internal Revenue set up deficiencies because, he asserted, the taxpayer should have included in his income for those years a share of the earnings of a partnership in which the taxpayer had formerly

been a member. The taxpayer contended that his interest had been transferred to his daughter Mary and that she succeeded him as a partner. The Tax Court sustained the Commissioner. 1950 P–H T.C. Mem.Dec. Par. 50,105. This Court affirmed. Alexander v. Commissioner, 194 F.2d 921.

The petitioners, Harley Alexander and Maude Alexander, filed an income tax return for the year 1945 and the Commissioner again proposed a deficiency for failure to include the share of partnership income which the taxpayer claimed was not his nor taxable to him but his daughter's and taxable to her. The Tax Court again sustained the Commissioner with an opinion by Judge Tietjens, four judges concurring, with a dissent by Judge Arundell in which he was joined by two other judges. 22 T.C. 318. The case is before us on Petition for Review.

The Tax Court held, in the present case, that no change in material facts took place in 1945 and the decision in the prior proceeding operated as collateral estoppel. The minority took the view that the facts in the instant case, while similar, are not identical with the facts before the Court at the prior trial and that the facts and record should be examined and from them a determination should be made whether a valid partnership existed in 1945.

Let us, before considering the collateral estoppel doctrine, review the evidence in the prior case, the findings with respect thereto of the Tax Court and the reasons for the affirmance of the Tax Court decision by this Court; and let us then compare the situation in the two proceedings.

Robert Alexander and the taxpayer, Harley Alexander, formed a partnership prior to 1942 which engaged in the farming and cattle business on rented land in the Texas Panhandle. They made a deal with Albert Moen to manage the operation for a ten per cent. interest in it. There was evidence that the taxpayer had said that he would give and that he later said he had given his interest in the enterprise to his daughter

Mary. The daughter became the wife of Walter M. Hart on March 7, 1942, and was thereafter with him at College Station, Texas, and at various army camps until May, 1943, when her husband went overseas as a member of the Armed Forces. During the school years of 1943–1944 and 1944–1945, Mary was with her younger sister at Amarillo, Texas. During the years 1943 and 1944 the taxpayer wrote some checks on the partnership bank account, participated in seeing to the harvesting of a wheat crop, bought cattle and feed for the partnership and otherwise participated in management. In its findings in the prior case the Tax Court said:

"The record fails to show that the income attributed to Mary Alexander, as a partner in Alexander & Alexander, was not earned by the petitioner, and fails to show that Mary Alexander, Robert Alexander, and Albert Moen in good faith entered into partnership.

*     *     *     *     *     *

"The essential problem is whether the petitioner in fact continued to earn the income involved, after the alleged formation of partnership between Mary, Robert Alexander, and Albert Moen, since the Commissioner determined that petitioner's arrangement with Mary 'represented only a gift of future income'. In short, did petitioner retire from and Mary become a part of Alexander & Alexander on January 22, 1942, as is petitioner's theory?

*     *     *     *     *     *

"That Mary received a share is undoubted, but, of course, does not of itself establish partnership or meet the presumption that the Commissioner was correct in his view that petitioner earned the amounts received by her."

After reviewing the facts the Tax Court continued:

"All of these considerations lead us to the conclusion that the Commissioner is by no means shown to

have erred in considering that the income should be taxed to petitioner. * * * We, therefore, conclude and hold that no errror is shown in the determination of deficiency as to the income reported by Mary."

Thus it appears that in the first case the Tax Court found that the taxpayer had failed to sustain the burden of showing error in the Commissioner's determination.

In considering the Tax Court's findings in the prior case, this Court used the following language:

"There is unquestionably some evidence from which a fact finder could draw the inference that Robert Alexander and Mary Hart were, for the years in question, genuinely and really members of a partnership. There is other evidence, though, if not of a completely contradictory, at least of an equivocal, character from which a contrary inference could be drawn. It cannot, be said, therefore, that the evidence as a whole is unequivocal or compelling, so that we can with confidence declare clearly erroneous the carefully set out findings, made by the judge of the Tax Court who heard and saw the witnesses, that not Mary but Harley Alexander was Robert's partner." 194 F.2d 921, 922.

In affirming the Tax Court's decision, this Court said:

"Upon a careful examination of the record as a whole, in the light of these views, we are not able to say that the findings of the Tax Court, within the applicable authorities, Sanders v. Leech, 5 Cir., 158 F.2d 486, and U. S. v. U. S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, were clearly erroneous." 194 F.2d 921, 924.

In the subsequent and instant case, it was shown that from the beginning of the year until the fall of 1945 Albert Moen handled the operation of the farming and cattle business, that Moen re-ceived all of his instructions from Robert Alexander, that taxpayer borrowed funds from the alleged partnership which he repaid, that his activity in the farming and cattle business was less than in prior years, that Walter Hart was killed in action in May of 1945, that after his death Mary gave more of her attention to the enterprise, that the partnership books, meager though they were, showed Mary as having an interest, and that upon these books Mary did some work. Albert Moen, Robert Alexander and Mary all testified that there was a partnership between Robert, Mary and Moen. The absence of testimony in the prior proceeding that the parties intended to become partners was the subject of comment by the Tax Court in its opinion. Land owned by Mary was used in the farming and cattle business without any rental.

The Tax Court, in the instant case, has held that the issue as to the partnership is identical with that in the 1943–1944 case. It reasons, in its opinion, that "If Harley transferred his interest to Mary, he did so in the earlier years, and the Court already has held that he did not do so in those years". The opinion, expressed by the Tax Court that the petitioners cannot reopen what was decided in the prior decision, invokes the collateral estoppel rule sometimes called estoppel by judgment. It is a corollary of the doctrine of res judicata.

The collateral estoppel rule is stated, and its application to income tax cases is outlined in Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. There it was said:

"It is first necessary to understand something of the recognized meaning and scope of res judicata, a doctrine judicial in origin. The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that

when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. Sac County, 94 U.S. 351, 352, 24 L.Ed. 195 [197]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. * * *

"But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' [Citing cases.] Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, res judicata is usually and more accurately referred to as estoppel by judgment, or collateral estoppel. * * *

"These same concepts are applicable in the federal income tax field. Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of 'redundant litigation of the identical question of the statute's application to the taxpayer's status'. Tait v. Western Maryland R. Co., 289 U.S. 620, 624, 53 S.Ct. 706, 707, 77 L.Ed. 1405." 333 U.S. 597, 599, 68 S.Ct. 715, 719.

■ Were there points in the case now before the Court which were not at issue in the first proceeding? What were the matters actually presented and determined in the first suit, and are the matters so presented and determined such as are conclusive in the instant case? The conclusion of the Tax Court in the first case that the taxpayer's arrangement with Mary represented only a gift of future income was a double anomaly as a gift must be of property in existence at the time of the gift and the transfer from donor to donee must be presently effective. Cohan v. Commissioner of Internal Revenue, 2 Cir., 1930, 39 F.2d 540. The Commissioner also found in the first case, so the Tax Court's opinion recited, that a partnership of which Mary was a partner was not shown to exist and that the taxpayer earned the income which was paid to Mary. It was assumed in the prior proceeding and evidence was introduced in the second proceeding to prove that Harley had given to Mary a 45 per cent. interest in the partnership property. The Tax Court bases its opinion in the subsequent case upon the premises that

the prior case held that there was no partnership during the tax years 1943 and 1944 and no evidence in the subsequent case to establish that a partnership was thereafter formed of which Mary was a partner. From the Tax Court's opinion in the first case it appears that it decided the taxpayer had failed to sustain the burden of showing error in the Commissioner's tax determination. In the affirmance by this Court it was determined that the Tax Court's decision was not shown to be clearly erroneous. The question decided in the prior case was whether the so-called income paid to Mary was taxable to the taxpayer and we cannot say that the issue of a partnership vel non was the sole or determinate question in the case. Nor do we think that the interests of justice would be served by a holding that it cannot ever be shown that by agreements heretofore made the taxpayer ceased to be a partner or that his daughter did not become a partner in the enterprise from which the partnership income was produced.

The principles which control in the solution of the problem presented are found in the Sunnen case where it is said:

"Of course, where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. See The Evergreens v. Nunan, 2 Cir., 141 F.2d 927 [152 A.L.R. 1187]. And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is considered just and desirable, reliance may be placed upon the ordinary rule of stare decisis. Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment." 333 U.S. 601, 602, 68 S.Ct. 721.

The record before the Tax Court, its opinion and the affirming opinion of this Court in the first proceeding, do not show determinations of fact and of legal issues such as preclude a consideration of the issues of fact and law in the second case.

In the Sunnen case the Supreme Court cites Dean Griswold's article which appeared in 1937, and in which was made the following comment:

"Where different taxable years are involved in the two cases, res judicata should be applied much more narrowly than has been true in some cases in the past. Not only should it be confined to issues which are identical in the two cases, but the word 'identical' should be rigidly construed to apply only to situations where the applicable statute is unchanged and all of the controlling events occurred before the earlier of the tax years." Griswold, Res Judicata in Tax Cases (1937) 46 Yale Law Journal 1320.

We think the minority of the Tax Court was correct in the view that the facts should be examined. We think the doctrine of collateral estoppel does not apply.

The taxpayer reported as long-term capital gain under the provi-

sions of 26 U.S.C.A. § 117(j), now § 1231 Revenue Act of 1954, the profit realized from the sale of cows. The Tax Court declined to permit long-term capital gain treatment. We agree with this determination. The taxpayer testified he raised a big part of the cattle sold but "didn't know for sure" that he raised all of them. It is not shown how many cattle were bought nor when they were bought by taxpayer. The proof does not show the extent to which the cattle sold were held for the statutory six months period. The burden of so showing was on the taxpayer.

The judgment of the Tax Court in denying long-term capital gain treatment to the profit from the sale of cattle is affirmed; and the judgment as to the inclusion in taxpayer's income of partnership earnings is reversed and remanded for a determination of the issues upon the facts in accordance with the views here expressed.