Joe COMES and Riley Paint, Inc., an
Iowa Corporation, Appellees,

v.

MICROSOFT CORPORATION, a
Washington Corporation,
Appellant.

No. 05–0097.

Supreme Court of Iowa.

Jan. 27, 2006.

Edward W. Remsburg of Ahlers & Cooney, P.C., Des Moines, Thomas W. Burt, Richard J. Wallis, and Steven J. Aeschbacher, Redmond Washington, David B. Tulchin, Joseph E. Neuhaus, and Richard C. Pepperman II, of Sullivan & Cromwell, L.L.P., New York City, and Charles B. Casper of Montgomery, McCracken, Walker & Rhoads, L.L.P., Philadelphia, PA, for appellant.

Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, and Richard M. Hagstrom of Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P., Minneapolis, MN, for appellees.

STREIT, Justice.

Justice Felix Frankfurter once observed, "to some lawyers, all facts are created equal." However, for the purposes of collateral estoppel, they are not. The defendant, Microsoft Corporation, was granted permission to take an interlocutory appeal from the district court's ruling that collateral estoppel would apply to 352 findings of fact arising from prior federal antitrust litigation. Because we find the district court's application of the "necessary and essential" requirement of collateral estoppel was too broad, we reverse the district court's order and remand with instructions.

## I. Facts and Prior Proceedings

Joe Comes and Riley Paint sued Microsoft Corporation for violating provisions of the Iowa Competition Law. *See* Iowa Code §§ 553.4, 553.5 (1997). This is the third time this case has journeyed into this court. *See Comes v. Microsoft Corp.,* 696 N.W.2d 318 (Iowa 2005) (finding plaintiffs established the prerequisites for class certification); *Comes v. Microsoft Corp.,* 646 N.W.2d 440 (Iowa 2002) (holding indirect purchasers may maintain an antitrust suit against Microsoft). The facts were set out fully in our first decision, and we now state only those facts necessary for this appeal.

In the spring of 1998, the United States and several states (including Iowa) filed a civil action against Microsoft Corporation in the District of Columbia for violations of the Sherman Act (hereinafter the "Government Action"). A bench trial before Judge Thomas Jackson lasted 76 days and included testimony from 26 live witnesses, deposition excerpts from 79 additional witnesses, and over 2700 exhibits. Rather than issue one decision and judgment, Judge Jackson bifurcated his decision by first making 412 findings of fact "proved by a preponderance of the evidence." *See generally United States v. Microsoft Corp.,* 84 F.Supp.2d 9 (D.D.C.1999). Five months later, Judge Jackson entered his decision concluding Microsoft (1) illegally maintained a monopoly in the market of licensing Intel-compatible PC operating systems, (2) attempted to monopolize the web browser market, and (3) entered into an illegal tying arrangement by bundling its Internet Explorer web browser with its Windows operating system, in violation of sections 1 and 2 of the Sherman Act. *United States v. Microsoft Corp.,* 87 F.Supp.2d 30, 35, 44 (D.D.C.2000). This decision did not refer to a large number of the factual findings entered five months earlier.

Microsoft appealed this decision, and the United States Court of Appeals for the District of Columbia affirmed Judge Jackson's conclusion that Microsoft illegally

maintained a monopoly in the PC operating systems market. *United States v. Microsoft Corp.*, 253 F.3d 34, 80 (D.C.Cir. 2001). However, the D.C. Circuit reversed the attempted monopolization claim and remanded the claim of illegally tying the Internet Explorer web browser to Windows for a new trial. *Id.* at 94. The D.C. Circuit also vacated the district court's remedy and disqualified Judge Jackson for ethical violations related to his discussion of the merits of the case with reporters. *Id.* at 117. On remand, the case was reassigned to Judge Kollar–Kotelly. Judge Kollar–Kotelly rejected almost all of the additional remedies requested by the states and determined many of Judge Jackson's 412 findings of fact "were ultimately not relied upon by the district court in conjunction with the imposition of liability for violation of § 2 of the Sherman Act." *New York v. Microsoft Corp.*, 224 F.Supp.2d 76, 138 (D.D.C.2002).

In the present case, the class of plaintiffs alleges Microsoft maintained or used a monopoly in conjunction with its Windows 98 operating system for the purpose of excluding competition or controlling, fixing, or maintaining prices in violation of Iowa Code sections 553.4 (prohibiting restraint of trade) and 553.5 ("A person shall not attempt to establish or establish, maintain, or use a monopoly of trade or commerce in a relevant market for the purpose of excluding competition or of controlling, fixing, or maintaining prices."). These allegations are based in part on the factual findings and conclusions made in the Government Action. In July of 2004, the plaintiffs filed a motion requesting the court use the doctrine of collateral estoppel to foreclose Microsoft from relitigating

352 of the 412 factual findings made in the Government Action.

The district court granted this motion through a pretrial order applying the doctrine of "offensive" collateral estoppel to preclude Microsoft from relitigating the 352 factual findings. We granted Microsoft's application for leave to appeal the district court's ruling.

The overarching issue in this appeal is whether the district court correctly applied the requirement that facts subject to collateral estoppel be "necessary and essential" to the judgment in the prior litigation. Microsoft contends the court's misapplication of this standard led to an overbroad ruling in which preclusive effect was given to 336 factual findings that were not "necessary and essential" to the judgment.[1]

## II.  Standard of Review

██ Because this appeal is premised upon the district court's application of an incorrect legal standard, our review is for error. *See Walters v. Herrick*, 351 N.W.2d 794, 796 (Iowa 1984) (stating, as a general rule, an "assertion that an incorrect legal standard was applied is reviewed on error").

## III.  Merits

██ The doctrine of collateral estoppel, sometimes referred to as issue preclusion, prevents parties from relitigating issues previously resolved in prior litigation if certain prerequisites are established. *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981). In general, collateral estoppel prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous

---

1.  The parties agree 16 of the 352 factual findings were necessary and essential to the D.C. Circuit's judgment. The sixteen findings of the judgment are set forth in paragraphs 18, 33–34, 161, 164, 170, 213, 244–45, 339, 350–52, 394, 401, and 406.

action. *Id.* This doctrine may be utilized in either a defensive or offensive manner. *Id.* Defensive use of the doctrine is when "a stranger to the judgment, ordinarily the defendant in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense." *Id.* Offensive use of the doctrine is when "a stranger to the judgment, ordinarily the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action or claim." *Id.*

This case involves offensive use of the collateral estoppel doctrine. The plaintiffs, who were strangers to the first judgment, seek to rely upon the prior judgment that Microsoft had maintained an operating system monopoly by anticompetitive means and ask the court to accord preclusive effect to 352 of the 412 findings of fact entered in the Government Action.

■ Collateral estoppel may be invoked if four prerequisites are met:

(1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Id.* The fighting issue in this case involves the application of the fourth prerequisite to the findings of fact entered in the Government Action.

Admittedly, the fourth requirement of our collateral estoppel analysis—the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment—is exceedingly vague. However, prior cases demonstrate that we apply this requirement somewhat narrowly.

Almost 150 years ago, long before we articulated the present collateral estoppel analysis, we said "[m]atters which arise only incidentally in the evidence, however much they may influence the mind of the judge or jury in arriving at a conclusion, are not matters *adjudicated.*" *Haight v. City of Keokuk,* 4 Iowa 199, 4 Clarke 199, 208 (Iowa 1857) (emphasis in original).

In *Hutchinson v. Maiwurm,* 162 N.W.2d 408, 410–11 (Iowa 1968), we prefaced our analysis of a case involving the collateral estoppel doctrine by stating "a judgment is not binding or conclusive as to facts or questions of law, although put in issue and actually tried and expressly determined by the court in the former action, where such matters were immaterial or unessential to the determination of the real and decisive issue." In applying this standard to the facts of the case, we looked to other jurisdictions for guidance. *Hutchinson,* 162 N.W.2d at 411–12. In particular, we considered a Wyoming case, where a factual finding that was not "vital to the case" and was "not the point upon which the case turned" was not given estoppel effect. *Id.* at 412 (citing *Willis v. Willis,* 48 Wyo. 403, 49 P.2d 670, 677 (1935), *overruled on other grounds by Shaw v. Smith,* 964 P.2d 428 (Wyo.1998)). In another case, the Supreme Court of New Mexico did not grant estoppel effect to a prior court's conclusions of fact because the facts "were not ultimate facts ... without which the [previous] judgment would lack support in an essential particular." *Id.* at 413, 49 P.2d 670 (citing *State v. Nance,* 77 N.M. 39, 419 P.2d 242, 245 (1966)). On the strength of these decisions, we decided in *Hutchinson* that the findings and conclusions in the previous action did not satisfy the doctrine of collateral estoppel and were

therefore not subject to estoppel effect. *Id.*

In *Supreme Court Board of Professional Ethics v. D.J.I.*, 545 N.W.2d 866 (Iowa 1996), we analyzed the "necessary and essential" requirement in the context of an attorney ethical violation proceeding. In *D.J.I.*, an attorney subject to a disciplinary proceeding based on unethical dealings with his clients sought to relitigate whether he had violated various provisions of the Iowa Code of Professional Responsibility, even though that question had been decided in an earlier civil proceeding. 545 N.W.2d at 868–69. In the earlier civil proceeding, two former clients alleged the attorney had violated several professional rules and committed civil fraud and legal malpractice. *Id.* at 869. The district court, in a bench ruling, concluded the attorney committed fraud, legal malpractice, constructive fraud, and conspiracy to defraud. *Id.* In so ruling, the court found the former clients proved the scienter element of their fraud claim because the attorney had violated lawyer disciplinary rules concerning conflicts of interests. *Id.* The attorney did not appeal the adverse decision. *Id.* An ethical complaint was subsequently filed against the attorney for his representation of the same clients. *Id.* The Iowa Supreme Court Board of Professional Ethics and Conduct relied on the principles of issue preclusion to prove these same ethical violations. *Id.* at 870. The attorney argued the district court's conclusion in the previous civil proceeding that he had violated the Iowa Code of Professional Responsibility was "not necessary and essential to the issues determined in the resulting judgment." *Id.* We disagreed. We noted: "[r]ecovery in a fraud action against an attorney is premised on the plaintiff's ability to show ... the following elements: (1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive...." We concluded the

disciplinary code violations were "*crucial*" to the previous civil fraud and legal malpractice case against the attorney because the violations were the evidence used by the former clients to prove the scienter element of their civil fraud claim. *Id.* at 875–76 (emphasis added).

■ These cases illustrate that we apply the necessary and essential requirement narrowly, and only preclude those facts vital or crucial to the previous judgment, or those properly characterized as ultimate facts without which the previous judgment would lack support. *See generally id.*; *Hutchinson*, 162 N.W.2d at 412–13.

## IV. Analysis of the District Court's Ruling

■ At the outset, the district court correctly recited the necessary and essential requirement—"When issues of law or fact were raised and litigated and relevant to the prior proceeding, collateral estoppel precludes relitigation when the determination of those issues was also necessary and essential to the judgment in the earlier action." The court then set forth the legal standard for monopolization claims used by the D.C. Court of Appeals in the Government Action and identified approximately two and a half pages of legal conclusions that "survived intact" after the D.C. Court of Appeals modified the district court's judgment in the Government Action. However, when the court determined 352 out of the 412 findings of fact "were necessary and essential to the elements of the government's monopolization claim against Microsoft" because these findings "provided a proper foundation" or "proper basis" for individual elements of the monopolization claim in the Government Action, the court's interpretation of our collateral estoppel doctrine drifted away from the doctrine's original intent.

The district court's first precluded finding of fact illustrates that the necessary and essential requirement was misapplied:

A "personal computer" ("PC") is a digital information processing device designed for use by one person at a time. A typical PC consists of central processing components (e.g., a microprocessor and main memory) and mass data storage (such as a hard disk). A typical PC system consists of a PC, certain peripheral input/output devices (including a monitor, a keyboard, a mouse, and a printer), and an operating system. PC systems, which include desktop and laptop models, can be distinguished from more powerful, more expensive computer systems known as "servers," which are designed to provide data, services, and functionality through a digital network to multiple users.

This finding is clearly not a fact "upon which the case turned" and it is not a fact one would deem vital or crucial to the ultimate issue precluded—that Microsoft violated the antitrust laws for unlawful monopoly maintenance of operating systems from the period of 1995–1998. *See D.J.I.*, 545 N.W.2d at 875; *Hutchinson*, 162 N.W.2d at 412–13. This finding is a subsidiary fact the parties could readily establish through testimony at trial, a request for admission, or a pretrial stipulation of facts.[2] It is not a fact crucial or vital to the ultimate issue in the previous case.

■ Before a court applies collateral estoppel offensively, the court must also consider whether treating an issue or fact as conclusively determined will complicate the determination of other issues in the subsequent action or prejudice the interests of the defending party. *Hunter*, 300 N.W.2d at 125.

A lengthy list of subsidiary facts granted preclusive effect could be very prejudicial to a defendant. Application of collateral estoppel to every subsidiary matter actually litigated in a prior proceeding greatly increases the hazards in trying the first lawsuit as well as the hazards of misuse in a subsequent lawsuit because "[l]ogical relevance is of infinite possibility," and an innocuous fact in the first proceeding could be used as a critical fact against the defendant in a second proceeding. *See Evergreens v. Nunan*, 141 F.2d 927, 929 (2d Cir.1944). Along with the inherent danger that preclusive effect will be given to determinations of issues that were not seriously contested and may have been barely relevant in the first proceeding, a long list of isolated findings could confuse or mislead the jury. *See Coburn v. Smithkline Beecham Corp.*, 174 F.Supp.2d 1235, 1241 (D.Utah 2001) (finding "the risk of prejudice and confusion significantly outweighs any benefit that might be derived from applying collateral estoppel" to an isolated factual finding); *see also Whelan v. Abell*, 953 F.2d 663, 669 (D.C.Cir.1992) (accepting the district court's decision to reject a broad application of collateral estoppel for fear of "unduly swaying or confusing the jury" and distorting the resolution of other issues). A brief review of the 336 findings of fact reveals an inordinate number of such findings. These subsidiary facts may or may not have been seriously contested in the Government Action and therefore could unfairly prejudice the defendant in

---

2. This court is cognizant of the difficulty in presenting this case at trial and an underlying motivation of Comes to start this case with a panoply of facts that are deemed established—facts that do not need further proof. These findings would provide a broad landscape of facts upon which to park this case. Given the size of this litigation, it is enticing to start this case with a foundation of basic facts. However, as explained herein, such is not the purpose of collateral estoppel.

the present case by unduly influencing the jury.

Because the court did not properly apply the necessary and essential standard and did not properly consider the potential prejudice inherent in such a large list of subsidiary facts, we reverse the district court's order granting preclusive effect to these factual findings.

## V. Directions for Remand

Our necessary and essential requirement parallels the standard set forth in the first Restatement of Judgments, which stated collateral estoppel is "applicable to the determination of facts in issue, but not to the determination of merely evidentiary facts, even though the determination of the facts in issue is dependent upon the determination of the evidentiary facts." Restatement of Judgments § 68 cmt. p (1942). Judge Learned Hand stated this distinction more succinctly when he wrote:

[A] "fact" may be of two kinds. It may be one of those facts, upon whose combined occurrence the law raises the duty, or the right, in question; or it may be a fact, from whose existence may be rationally inferred the existence of one of the facts upon whose combined occurrence the law raises the duty, or the right. The first kind of fact we shall for convenience call an "ultimate" fact; the second, a "mediate datum." "Ultimate" facts are those which the law makes the occasion for imposing its sanctions.

*Evergreens*, 141 F.2d at 928.

This section was significantly altered in 1982 by the Second Restatement of Judgments. The second Restatement rejected rote application of the ultimate fact/evidentiary fact analysis because, even if a fact is properly categorized as evidentiary, "great effort may have been expended by both parties in seeking to persuade the adjudicator of its existence or nonexistence and

it may well have been regarded as the key issue in the dispute.". Restatement (Second) of Judgments § 27 cmt. j (1982). The second Restatement replaced its comment discussing the distinction between ultimate and evidentiary facts with a new analysis where the court must determine "whether the issue was actually recognized by the parties as *important* and by the trier as *necessary* to the first judgment." *Id.* (emphasis added). This "important and necessary" analysis protects parties from the dangers of innocuous, subsidiary facts because it only precludes such facts as were truly disputed in the first proceeding. Or, as aptly stated by the First Circuit Court of Appeals,

[w]hen two adversaries concentrate in attempting to resolve an issue importantly involved in litigation, there is no unfairness in considering that issue settled for all time between the parties and those in their shoes. But ....it is unfair to close the door to issues which have not been on stage center, for there is no knowing what the white light of controversy would have revealed.

*Farmington Dowel Prods. Co. v. Forster Mfg. Co.*, 421 F.2d 61, 79 (1st Cir.1970).

■ Because this analysis protects against the dangers stemming from preclusion on subsidiary facts, we adopt this analysis as well. Rather than pigeonholing facts as evidentiary or ultimate, courts must determine whether the issue was actually recognized by the parties as important and by the adjudicator as necessary to the first judgment. Under this analysis, collateral estoppel will only adhere to those factual findings necessary and essential to the prior judgment, rather than findings of every minute fact contested by the parties in the previous trial.

■ As noted above, the parties agree 16 of the 352 factual findings granted pre-

clusive effect by the district court were necessary and essential to the underlying judgment. For example, findings 33 and 34 hold:

33. Microsoft enjoys so much power in the market for Intel-compatible PC operating systems that if it wished to exercise this power solely in terms of price, it could charge a price for Windows substantially above that which could be charged in a competitive market. Moreover, it could do so for a significant period of time without losing an unacceptable amount of business to competitors. In other words, Microsoft enjoys monopoly power in the relevant market.

34. Viewed together, three main facts indicate that Microsoft enjoys monopoly power. First, Microsoft's share of the market for Intel-compatible PC operating systems is extremely large and stable. Second, Microsoft's dominant market share is protected by a high barrier to entry. Third, and largely as a result of that barrier, Microsoft's customers lack a commercially viable alternative to Windows.

Both of these findings were necessary and essential to the underlying judgment because the court had to establish Microsoft had monopoly power before it could conclude Microsoft maintained monopoly power. These findings were also important because both parties debated the relevant market and Microsoft's monopoly power in that market.

Because the district court failed to apply the proper standard in evaluating plaintiffs' collateral estoppel claims, we reverse its order. The case is remanded to that court for a reconsideration of this issue under the standard that we have articulated, aided by the more particularized arguments that will now be available to counsel as the result of our clarification of the rule of law to be applied. On remand, the parties herein will have the opportunity to convince the court which facts were actually recognized by the parties in the Government Action as the key issues in dispute and by the adjudicator as necessary to the final judgment.

## VI. Conclusion

Because the district court's application of the "necessary and essential" requirement of collateral estoppel was too broad, we reverse the district court's order and remand for further proceedings in conformance with this opinion.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**