Rita GOTTESMAN, Maria Mattiello, and Paul J. Peyser, Plaintiffs,

v.

GENERAL MOTORS CORPORATION and E. I. du Pont de Nemours and Company, Defendants.

United States District Court
S. D. New York.
Sept. 18, 1963.

See also 28 F.R.D. 325.

Netter & Netter, New York City, General Counsel for plaintiffs; Gordon, Brady, Caffrey & Keller, O'Connor & Farber, Richard Netter, Edward A. Rothenberg, Henry L. Bayles, Abbott Gould and Jay Miller, New York City, of counsel.

Frank H. Gordon, New York City, and Daniel M. Gribbon, Washington, D. C., for defendant E. I. du Pont de Nemours & Co.; Henry P. Sailer, Alvin Friedman, Washington, D. C., Irving S. Shapiro, Wilmington, Del., and Covington & Burling, Washington, D. C., of counsel.

George A. Brooks, New York City, for defendant General Motors Corp.; Edward B. Wallace, New York City, of counsel.

METZNER, District Judge.

Plaintiffs are minority stockholders of General Motors Corporation who have based this derivative action against du Pont and General Motors primarily on matters involved in the government antitrust suit against these corporations and U. S. Rubber Co. United States v. E. I. du Pont de Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957). The final judgment in that case, entered on March 1, 1962, dismissed without prejudice the claims alleging violations of the Sherman Act, and adjudicated that du Pont's acquisition of General Motors stock violated section 7 of the Clayton Act. In their complaint, plaintiffs have quoted at length from the above decision of the Supreme Court in the government suit, relying on section 5(a) of the Clayton Act, 15 U.S.C. § 16(a).

It is the usual practice in a private Sherman Act litigation to defer a determination as to the effect to be given under section 5(a) to a prior government judgment until the deposition-discovery proceedings have been completed, and court and counsel are ready to frame the issues for trial. See, e. g., Alamo Theatre Co. v. Loew's, Inc., 143 F.Supp. 419 (N.D.Ill.1956). However, a different approach is necessary in this case in order to define the scope of deposition-discovery procedures. The complaint alleges and seeks recovery for both Sherman Act and Clayton Act violations. Since the government judgment was predicated solely on a violation of section 7 of the Clayton Act, serious questions arise as to the solace available to plaintiffs from that judgment. Section 7 condemns acts that have a reasonable *tendency to result* in violations of the Sherman Act. The latter act speaks of actual restraints and monopolies. As the Supreme Court pointed out,

"The Clayton Act was intended to supplement the Sherman Act. * * * Its aim was primarily to arrest apprehended consequences of intercorporate relationships *before those relationships could work their evil,*

which may be at or any time after the acquisition, depending upon the circumstances of the particular case." 353 U.S. at 597, 77 S.Ct. at 879, 1 L.Ed.2d 1057. (Emphasis supplied).

Therefore a ruling on the availability to these plaintiffs of the judgment in the government suit is important to advise plaintiffs of the extent to which they must rely on independent evidence to prove their case.

Furthermore, and independent of the applicability of section 5(a), there is the question whether recovery of money damages may be had for a violation of section 7 of the Clayton Act.

I

Section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), provides:

"A final judgment or decree * * * hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws * * * as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto".

The Supreme Court has held that section 5(a) adopts the general principles of collateral estoppel. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951).

"Such estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution. * * * In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment." 340 U.S. at 569, 71 S.Ct. at 414, 95 L.Ed. 534.

Subsequent cases have held that this rule is applicable when the government suit was a civil suit. Eagle Lion Studios,

Inc. v. Loew's, Inc., 248 F.2d 438 (2d Cir. 1957), aff'd by an equally divided Court, 358 U.S. 100, 79 S.Ct. 218, 3 L.Ed. 2d 147 (1958); Webster Rosewood Corp. v. Schine Chain Theatres, Inc., 263 F.2d 533 (2d Cir.), cert. denied, 360 U.S. 912, 79 S.Ct. 1296, 3 L.Ed.2d 1261 (1959); Richfield Oil Corp. v. Karseal Corp., 271 F.2d 709 (9th Cir. 1959), cert. denied, 361 U.S. 961, 80 S.Ct. 590, 4 L.Ed.2d 543 (1960).

Judge Learned Hand in the case of The Evergreens v. Nunan, 141 F.2d 927, 152 A.L.R. 1187 (2d Cir.), cert. denied, 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944), drew a distinction between ultimate facts and mediate data. Ultimate facts are those essential to the decision and "upon whose combined occurrence the law raises the duty, or the right, in question". Mediate data are facts "from whose existence may be rationally inferred the existence of one of the facts upon whose combined occurrence the law raises the duty, or the right." 141 F.2d at 928.

In Yates v. United States, 354 U.S. 298, 338, 77 S.Ct. 1064, 1087, 1 L.Ed.2d 1356 (1957), the Court held that:

> ". . . a prior judgment need be given no conclusive effect at all unless it establishes one of the ultimate facts in issue in the subsequent proceeding. So far as merely evidentiary or 'mediate' facts are concerned, the doctrine of collateral estoppel is inoperative. The Evergreens v. Nunan, 141 F.2d 927, 152 A.L.R. 1187; Restatement, Judgments § 68, comment p."

Furthermore, in Eagle Lion Studios, Inc. v. Loew's, Inc., supra, the court held that inferences may not be drawn from the prior judgment since the court is circumscribed under section 5(a) by the narrow limits of the estoppel doctrine.

From the above cases I conclude that only ultimate facts determined in the first suit are prima facie evidence of ultimate facts in the second suit. While the holding in Zuckerman v. E. I. du Pont de Nemours & Co., 1955 Trade Cas.

¶ 68022 (S.D.N.Y.1955), is to the contrary, it was apparently rejected by the subsequent decision in the Eagle Lion case, supra.

## II

We come then to the question of what ultimate facts were determined by the judgment in the government suit.

The main thrust of the government suit was alleged violations of sections 1 and 2 of the Sherman Act by the principal corporate defendants, General Motors, du Pont, and U. S. Rubber. This is evident from the proportion of the record devoted to the Sherman Act violations and from the briefs submitted and argument both in the district court and in the Supreme Court. There was, however, an allegation in the complaint that the acquisition by du Pont of General Motors stock violated section 7 of the Clayton Act. The Supreme Court saw fit to reverse the judgment of dismissal solely on a determination that a violation of section 7 of the Clayton Act had been proven. The Court said:

> "In view of our determination of the case, we are not deciding the Government's appeal from the dismissal of the action under the Sherman Act." 353 U.S. at 588 n. 5, 77 S.Ct. at 875, 1 L.Ed.2d 1057.

The Court pointed out that section 7 makes illegal the acquisition by one corporation of stock of another corporation where the effect of such acquisition may be (1) to substantially lessen competition between the two corporations, or (2) to restrain commerce in any section or community, or (3) to tend to create a monopoly of any line of commerce. The government's complaint only alleged that the effect of the acquisition was "to tend to create a monopoly in particular lines of commerce."

The Court held that there was, at the time of suit, reasonable probability of the creation of a monopoly in automotive fabrics and finishes.

The facts found by the Court, necessary to that judgment, were: that du Pont acquired 23 per cent of the stock

of General Motors, which acquisition was not solely for investment; that automotive finishes and fabrics constitute a substantial "relevant market" within the meaning of the Clayton Act; that General Motors' share of that market was substantial; that du Pont supplied a substantial share of that market; that du Pont used its stock interest to entrench itself as the primary supplier to General Motors of automotive fabrics and finishes.

Plaintiffs contend that the Supreme Court further found that du Pont "controlled" General Motors, and that this fact of control may be taken as prima facie evidence with respect to all their antitrust claims, not merely those involving automotive fabrics and finishes. While there is language in the opinion indicating that du Pont "controlled" General Motors, it appears only in the context of the finding that du Pont used its stock ownership as set forth above. In the instant suit plaintiffs must prove, without reliance on the government judgment as prima facie evidence, that the stock ownership was used to gain a position as primary supplier in other lines of commerce.

■ Plaintiffs have included in their briefs several quotations from the first and second decisions of the Supreme Court, and from Judge LaBuy's opinion of March 1, 1962, which they contend constitute findings of fact that are prima facie evidence in their favor in this litigation. However, statements of the Supreme Court that do not constitute facts *necessary* to its decision are not to be taken as facts prima facie determined in the private suit. Furthermore, the only time any question of liability was before the Court was on the first appeal. Thus language of the Court on the second appeal in 1961, and Judge LaBuy's opinion in connection with the final judgment entered on March 1, 1962, cannot constitute findings of fact on which a determination of liability was based in 1957.

Plaintiffs strongly urge that the Supreme Court found actual restraints of trade, and that the fact of such restraints

is prima facie established for the instant case. The opinions of the Court do speak of restraint and monopoly, but only with regard to the finding of a Clayton Act violation. Specifically, the Court answered in the affirmative the question

"whether du Pont's commanding position as General Motors' supplier of automotive finishes and fabrics was achieved * * * because its acquisition of the General Motors' stock, and the consequent close intercompany relationship, led to the insulation of most of the General Motors' market from free competition, with the resultant likelihood, at the time of suit, of the creation of a monopoly of a line of commerce." 353 U.S. at 588–589, 77 S.Ct. at 875, 1 L.Ed.2d 1057.

Plaintiffs rely heavily on the use of the word "insulation" in this quotation. However, the significance of this word is limited by the context in which it appears, that is, from it the Court concluded that a monopoly was likely to result. The Court did not find from such "insulation" that actual restraint of trade or monopolization had yet occurred.

If the Court had found actual restraint or monopoly, it would have been a simple matter to have reversed the entire judgment and afforded relief under the Sherman Act. However, the Court was specific in refusing to review the dismissal of the Sherman Act claims. Therefore I conclude that no reference in the Court's opinion to restraint and monopoly can be used to support plaintiffs' claims in this suit.

■ It seems too obvious to require discussion that facts on which a finding of a violation of the Clayton Act is based are insufficient to support a finding of a violation of the Sherman Act, since the Clayton Act was intended to catch potential Sherman Act violations in their incipiency. "Incipiency" denotes "any time when the acquisition threatens to ripen into a prohibited effect." United States v. E. I. du Pont de Nemours & Co., supra, 353 U.S. at 597, 77 S.Ct. at 879, 1 L.Ed. 2d 1057.

## III

We come now to the question of what use plaintiffs may make of these ultimate facts.

Plaintiffs have alleged eight antitrust claims, each charging du Pont with having violated sections 1 and 2 of the Sherman Act and section 7 of the Clayton Act. The prayer for relief demands treble damages and an injunction. Insofar as the Clayton Act is concerned, the injunctive relief sought has already been granted in the government suit. There remains, therefore, only the possibility of the recovery of damages.

■■ No case has been found discussing the question whether damages can be recovered for a violation of section 7 of the Clayton Act, and no case has been found where damages have been awarded for such a violation. The cases of Kogan v. Schenley Industries, Inc., 20 F.R.D. 4 (D.Del.1956), and Ozdoba v. Verney Brunswick Mills, Inc., 152 F.Supp. 136 (S.D.N.Y.1946), are not in point. In the Kogan case the court was concerned solely with the question whether a minority stockholder could maintain a derivative suit for an antitrust violation. In the Ozdoba case it is not clear that damages were requested for the alleged section 7 violations, since the action was described by the court as one for treble damages and an injunction for alleged violations of the Sherman and Clayton Acts, and in any event the court did not discuss the problem. The test of a section 7 violation is whether "there is a reasonable probability that the acquisition is likely to result in the condemned restraints." United States v. E. I. du Pont de Nemours & Co., supra, 353 U.S. at 607, 77 S.Ct. at 884, 1 L.Ed.2d 1057. Plaintiffs cannot be damaged by a *potential* restraint of trade or monopolization. There can be no claim for money damages for a violation of section 7.

## IV

■ We come next to the Sherman Act claims in this complaint. Here plaintiffs are met with the well-settled rule that a decree is an estoppel only as to the time with which it dealt. International Shoe Mach. Corp. v. United Shoe Mach. Corp., 315 F.2d 449 (1st Cir. 1963); Webster Rosewood Corp. v. Schine Chain Theatres, Inc., supra; Park Neponset Corp. v. Smith, 258 F.2d 452 (1st Cir. 1958); Orbo Theatre Corp. v. Loew's, Inc., 156 F.Supp. 770 (D.D.C. 1957), aff'd per curiam, 104 U.S.App.D.C. 262, 261 F.2d 380 (1958), cert. denied, 359 U.S. 943, 79 S.Ct. 725, 3 L.Ed.2d 677 (1959); Basle Theatres, Inc. v. Warner Bros. Pictures Distrib. Corp., 168 F.Supp. 553 (W.D.Pa.1958); see Theatre Enterprises, Inc. v. Paramount Film Distrib. Corp., 346 U.S. 537, 541, 74 S.Ct. 257, 98 L.Ed. 273 (1954); cf. Bordonaro Bros. Theatres, Inc. v. Paramount Pictures, Inc., 203 F.2d 676, 678 (2d Cir. 1953).

■ The judgment in the government case dealt with the situation as of June 1949. It has already been held that the present plaintiffs may only recover damages for acts occurring after May 4th, 1950. Since plaintiffs are concerned with a different time period, the government judgment is not available to them.

Plaintiffs contend that there is a presumption of continuance of unlawful conduct, on which they may rely to establish that du Pont continued the conduct on which the Supreme Court's decision was based at least until 1959 when the first judgment was entered that ordered a change in some of these practices. However, the cases on which plaintiffs rely dealt with criminal conspiracies, which are deemed to continue until abandonment or success. E. g., United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168 (1910); Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L. Ed. 1114 (1912); Marino v. United States, 91 F.2d 691, 113 A.L.R. 975 (9th Cir. 1937). The antitrust claims in this case do not involve a conspiracy, and the rule for which plaintiffs contend does not apply. Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L,

Ed. 804 (1934), also relied on by plaintiffs, was a civil antitrust suit subsequent to a criminal conviction. The Court held not that a presumption of continuance exists, but rather that there is *no* presumption that criminal conduct has been *abandoned* after the filing of an indictment.

It may be that plaintiffs may introduce in evidence the decree in the government suit, for historical purposes and background material, which is proper under the usual procedures in antitrust litigation, especially if the case is tried before the court without a jury. Cf. International Shoe Mach. Corp. v. United Shoe Mach. Corp., supra. Plaintiffs, however, will have to submit other proof of the existence of the facts on which they base their claims. Settle order.