Callman GOTTESMAN, Maria Mattiello
and Paul J. Peyser, Plaintiffs,

v.

GENERAL MOTORS CORPORATION
and E. I. du Pont de Nemours
& Company, Defendants.

Civ. No. 121–251.

United States District Court,
S. D. New York.

March 30, 1970.

David Brady, New York City, for plaintiffs, O'Connor & Farber, Gordon, Brady, Caffrey & Keller, Netter, Lewy, Dowd, Fox, Ness & Stream, Rogers, Hoge & Hills, Leo Brady, Clendon H. Lee, Arthur B. Netter, Richard Netter, Henry L. Bayles, Abbott Gould and Sidney P. Howell, Jr., New York City, of counsel.

Ross L. Malone, New York City, for defendant, General Motors Corp., Edward B. Wallace, William A. Grier, John J. Higgins and Philip H. Omsberg, New York City, of counsel.

Littauer, Gordon, Ullman, Riseman & Ploscowe, New York City, and Covington & Burling, Washington, D. C., for defendant, E. I. du Pont de Nemours & Co., Frank H. Gordon, New York City, Daniel M. Gribbon and Harris Weinstein, Washington, D. C., and Irving S. Shapiro, Wilmington, Del., of counsel.

METZNER, District Judge.

This derivative action by minority stockholders of General Motors sought treble damages pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15, alleging that du Pont had violated § 7 of the Clayton Act, 15 U.S.C. § 18, and §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, and had breached its common law fiduciary duty to General Motors. The action was instituted immediately after the Supreme Court announced its decision in the government's enforcement action against these defendants. United States v. E. I. du Pont de Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957). The Court held that du Pont had obtained a commanding position as the supplier of automobile finishes and fabrics to General Motors through its own-

ership of 23% of the stock of General Motors and that this was a violation of § 7 of the Clayton Act.

In the instant case, this court held that a violation of § 7 did not give rise to a private right of action for money damages. At the same time it was held that the enforcement judgment was not available to the plaintiffs under § 5(a) of the Clayton Act, 15 U.S.C. § 16(a), because it dealt with a time period prior to that covered by this private suit. 221 F.Supp. 488 (S.D.N.Y.1963), *leave to appeal denied* (2d Cir. Jan. 31, 1964), *cert. denied,* 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (1964).

The trial on the merits of the Sherman Act claims and the fiduciary claim then proceeded, resulting in a judgment in favor of the defendants. 279 F.Supp. 361 (S.D.N.Y.1967). The plaintiffs, in appealing from this adverse judgment, raised the propriety of the court's previous rulings as to the applicability of § 7 and the effect to be given to the government judgment under § 5(a). The Court of Appeals remanded the case for further proceedings because it held that a private claim for money damages could be maintained on an alleged violation of § 7 and that the government judgment should have been given greater evidentiary weight. The court specifically stated that it did not pass upon the merits of the litigation. 414 F.2d 956 (2d Cir. 1969).

This court conferred with counsel who subsequently submitted briefs as to the proceedings to be had on the remand. The parties agreed that the claims for relief, including money damages for violation of § 7, could be determined on the existing record,[1] giving due weight to the judgment in the government enforcement action as suggested by the Court of Appeals. Du Pont conceded that its stock interest in General Motors constituted a violation of § 7 during the damage period. In terms of § 7, as interpreted by the Supreme Court in the government action (353 U.S. at 607, 77 S.Ct. 872, 1 L.Ed.2d 1057 [2]), this means that there was a reasonable probability that the stock ownership was likely to result in the creation of a monopoly at the time of suit.

The parties further agreed that the sole issue to be decided on the remand is whether this violation caused injury to General Motors. The Court of Appeals held:

"Of course, plaintiffs cannot rest on a showing of a violation of section 7; they must, as in private actions under other sections of the antitrust laws, prove that they have been injured by the violation." 414 F.2d at 961.

\* \* \* \* \* \*

"We are aware that the judgment is only prima facie evidence at best and that plaintiffs have the burden of showing not only antitrust law violation but injury as well." 414 F.2d at 965.

When the Court of Appeals speaks of injury, it is speaking of the fact of injury as opposed to the amount of damages, since the original trial was limited solely to the question of liability. In Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 114 n. 9, 89 S. Ct. 1562, 1571, 23 L.Ed.2d 129 (1969), the Court said:

"Zenith's burden of proving the fact of damage under § 4 of the Clayton Act is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage. It is enough that the illegality is shown to be a material cause of the injury; \* \* \* "

1. Du Pont did request permission to submit records as to General Motors' purchases of finishes and fabrics for the years 1960–1968, which request is denied.

2. The Court of Appeals pointed out (414 F.2d at 959) that the Supreme Court posed the question in terms of whether there was "the resultant likelihood, at the time of suit, of the creation of a monopoly of a line of commerce", and that the Court did not determine whether there was an actual restraint of competition at that time.

Translating the Court's language in terms of this case, it calls for answers to two questions. First, did du Pont's stock ownership produce the sales to General Motors? Second, if so, could General Motors have bought the merchandise at lower prices with equal quality and services?

To answer these questions on the existing record, a determination must be made as to the evidentiary weight to be given the government judgment. The Court of Appeals, in referring to the cases which it relied on to justify the use of a judgment covering a different time period, stated in 414 F.2d at 963:

> "While it is true that in none of these latter cases was the earlier government judgment allowed into evidence * * * it is equally true that no flat, inflexible rule of exclusion was applied. The rationale which emerges from them is that while a judgment of violation in a government suit covering a given period is insufficient to establish a violation at a later date, that judgment may be of evidentiary weight in the private action if it encompasses findings sufficiently related to the issues of the private action and if sufficient additional evidence is adduced to show that the illegal activities condemned in the government decree carried over into the period in issue."

§ 5(a) provides that a final judgment in an enforcement action is "prima facie evidence against such defendant" in a private damage suit "as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto".

I discussed the meaning of this language in 221 F.Supp. at 490. There is no need to review that material again. At that time I held that "only ultimate facts determined in the first suit are prima facie evidence of ultimate facts in the second suit." Id. at 491. I stated the following facts which the Court found necessary to the enforcement judgment:

> "that du Pont acquired 23 per cent of the stock of General Motors, which

acquisition was not solely for investment; that automotive finishes and fabrics constitute a substantial 'relevant market' within the meaning of the Clayton Act; that General Motors' share of that market was substantial; that du Pont supplied a substantial share of that market; that du Pont used its stock interest to entrench itself as the primary supplier to General Motors of automotive fabrics and finishes." Id. at 491–492.

These facts, however, were not given prima facie effect because the damage period here was different from that in the government suit. In view of the Court of Appeals ruling, these facts are now considered as prima facie evidence in this suit. I should point out that even without such prima facie weight I found after trial that the first four facts were conclusively proved by the plaintiffs, stating as to the stock ownership that "du Pont, by reason of its 23% stock interest in General Motors, had the power to control that corporation because of the unrelated ownership of the balance of the shares." 279 F.Supp. at 368.

The Supreme Court's second opinion in the du Pont case dealt with the form of relief to be granted in the government action. It said that it had held in its first opinion that du Pont's stock acquisition in General Motors "had led to the insulation from free competition of most of the General Motors market in automobile finishes and fabrics." 366 U.S. 316, 318–319, 81 S.Ct. 1243, 1246, 6 L.Ed.2d 318 (1961). The Court of Appeals interpreted this language to mean that the government judgment encompassed "not only an antitrust violation but also injury." 414 F.2d at 964. Therefore, this court must give this fact prima facie weight on the question of injury.

There have thus been established under the appellate rulings two matters which shall be prima facie evidence against the defendants in this suit which were not so considered on the trial. First, du Pont used its stock interest to entrench itself as the primary supplier of automotive fabrics and finishes to Gen-

eral Motors. Second, the stock interest led to the insulation from free competition of most of the General Motors market in automobile fabrics and finishes.

I have reviewed the evidence adduced on the trial and carefully considered plaintiffs' arguments as to the conclusions I should now draw, affording them under § 5(a) the full evidentiary weight of the government judgment, as directed by the Court of Appeals. Admittedly, the facts established prima facie by the government judgment do not by themselves dictate a finding for the plaintiffs on their § 7 claim or a different result on the Sherman Act or fiduciary claims. Additional evidence must be forthcoming to show the existence of these facts during the damage period in issue. 414 F.2d at 963. Added to this is plaintiffs' burden on the whole case to prove that there were violations of law which caused damage to General Motors.

On this review, I have come to the conclusion that the resolution of the evidence detailed in my original opinion (279 F.Supp. 361) should not be changed as to the Sherman Act and fiduciary claims.

■■■ The findings of fact originally made are equally apposite to plaintiffs' claim under § 7. The plaintiffs have failed to prove by a preponderance of the evidence that the stock interest caused General Motors to purchase its automotive finishes and fabrics from du Pont. I must again advert to, among other factors, the strong inference against the plaintiffs' position in this regard by reference to the small percentage of General Motors' requirements for fabrics that was allocated to du Pont. Furthermore, plaintiffs have failed to prove injury to General Motors. They have not shown that General Motors could have purchased the materials from someone other than du Pont at lower prices with equal service and quality.

Plaintiffs place great reliance on the recent decision in Zenith Radio Corp. v. Hazeltine Research, Inc., *supra*. *Zenith* presented the question whether it was clearly erroneous for the district court to sustain claims of injury in the Canadian, English and Australian markets. The Court upheld the district court as to the Canadian market, but reversed as to the English and Australian markets. With regard to the Canadian market, it was permissible for the trial court to draw the inference of causation on the showing of violation and damage. The Court did not find that the inference must be drawn as a matter of law. 395 U.S. at 123, 89 S.Ct. 1562. The inference was not found supportable as to the English and Australian markets because proof was adduced to the effect that independent managerial decisions caused Zenith not to sell in those markets. I made similar findings after trial in this case that the decisions as to purchases by General Motors were independently made. As the Court said in the first du Pont opinion:

"Similarly, the fact that all concerned in high executive posts in both companies acted honorably and fairly, each in the honest conviction that his actions were in the best interests of his own company and without any design to overreach anyone, including du Pont's competitors, does not defeat the Government's right to relief." 353 U.S. at 607, 77 S.Ct. at 884.

Further, the proof found in *Zenith* as being sufficient to establish the fact of injury is not comparable to the proof in this case.

To the extent that any analogy can be drawn from *Zenith*, it supports my conclusions.

Judgment to be entered accordingly. So ordered.