Callman GOTTESMAN, Maria Mattiello and Paul J. Peyser, Plaintiffs-Appellants,

v.

GENERAL MOTORS CORPORATION and E. I. du Pont de Nemours & Company, Defendants-Appellees.

No. 150, Docket 34982.

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 1970.

Decided Jan. 4, 1971.

Rehearing Denied Feb. 1, 1971.

David Brady, New York City, Bergreen & Bergreen, Gordon, Brady, Caffrey & Keller, Netter, Netter, Dowd, Fox & Ness, Leo Brady, Clendon H. Lee and Arthur B. Netter, New York City, of counsel, for plaintiffs-appellants.

Daniel M. Gribbon, Washington, D. C., Covington & Burling, Littauer, Gordon, Ullman, Riseman & Ploscowe, Hugh B. Cox, Harris Weinstein, Richard B. Stewart, Frank H. Gordon, Washington, D. C., and Irving S. Shapiro, Wilmington, Del., of counsel, for defendant-appellee E. I. du Pont de Nemours & Co.

Edward B. Wallace, New York City, Ross L. Malone, William A. Grier and John J. Higgins, New York City, of

counsel, for defendant-appellee General Motors Corp.

Before MARIS* and MOORE, Circuit Judges, and RYAN,** District Judge.

MARIS, Circuit Judge:

This is a derivative action brought under section 4 of the Clayton Act [1] by the plaintiffs as stockholders of General Motors Corporation against E. I. du Pont de Nemours and Company for treble the damages sustained by General Motors by reason of du Pont's violation of section 7 of the Clayton Act and sections 1 and 2 of the Sherman Act and the breach of its common law fiduciary duty. The action was commenced shortly after the decision of the Supreme Court in the suit of the United States v. E. I. du Pont de Nemours and Company was handed down in 1957 holding that du Pont's commanding position as a supplier of automotive fabrics and finishes to General Motors, obtained at least in part by its ownership of a 23% stock interest in General Mo-

tors, violated section 7 of the Clayton Act.[2] The Government's action was brought in 1949,[3] while the present private derivative action relates to the period 1950 to 1959. The plaintiffs in the present suit relied, under section 5(a) of the Clayton Act,[4] upon the matters adjudicated in the Government's action and they also offered a great deal of additional evidence seeking to establish injury.

A trial was had to a judge without a jury, limited to the question of injury or the fact of damage, as distinguished from the amount of the damages. The trial judge, having previously ruled that the Government's judgment was not available to the plaintiffs under section 5(a) of the Clayton Act because it dealt with a time prior to that covered by this private suit and that a violation of section 7 of the Clayton Act did not give rise to a private action for treble damages,[5] held that the plaintiffs had not proved their Sherman Act and fiduciary

---

* Of the Third Circuit, sitting by designation.

** Of the Southern District of New York, sitting by designation.

1. "§ 15. *Suits by persons injured; amount of recovery*
    "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and ·shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." [15 U.S. C.A. § 15.]

2. United States v. E. I. du Pont de Nemours and Company, 1957, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057.

3. The Government's action was held to be governed by the Clayton Act's provisions before the 1950 amendments. In 1949 section 7, in pertinent part, provided:
    "No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital of another corporation engaged also in commerce, where the effect of such acquisition may be to

substantially lessen competition between the corporation whose stock is so acquired and the corporation making the acquisition, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce." [15 U.S.C. (1946 Ed.) § 18.]

4. "(a) A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 4A, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 4A." [69 Stat. 283; 15 U.S.C.A. § 16(a).]

5. Gottesman v. General Motors Corporation, D.C.N.Y.1963, 221 F.Supp. 488, leave to appeal denied (2 Cir. Jan. 31, 1964), cert. den. 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88 (1964).

claims and dismissed the first and ninth causes of action insofar as they pertained to automotive fabrics and finishes.[6] On appeal by the plaintiffs this court set aside the judgment, holding that a violation of section 7 of the Clayton Act may be the basis for a private suit for damages and that the trial judge had not given sufficient evidentiary weight to the matters involved in the Government's prior judgment which the plaintiffs were entitled to have treated as prima facie evidence in their case.[7]

On remand the parties agreed that the claims for relief, including money damages for violation of section 7, could be determined on the existing record and that the issue should remain limited to the question of injury or the fact of damage. Upon reconsideration the trial judge held that the facts established prima facie by the Government's prior judgment were, first, that du Pont used its stock interest to entrench itself as the primary supplier of automotive fabrics and finishes to General Motors, and, second, that the stock interest led to the insulation from free competition of most of General Motors' market in these products. After affording evidentiary weight to the facts thus established prima facie, the trial judge held that they in themselves did not support a finding of actual injury or damage to General Motors on the section 7 claim or require a different result from that previously reached on the Sherman Act and fiduciary claims. Pointing out that no showing had been made that General Motors could have purchased the materials in question on the open market at lower prices with equal service and quality the trial judge concluded that the plaintiffs had failed to prove injury to General Motors and judgment was again entered dismissing the first and ninth causes of action.[8] The present appeal, the second by the plaintiffs, followed.

The facts disclosed in the Government's case have been fully set out in the opinions of the District Court for the Northern District of Illinois[9] and the Supreme Court[10] in that case and the additional facts developed in the present case are sufficiently recited in the opinions of the district court[11] in this case. They, therefore, need not be repeated here.

■ The plaintiffs' contentions on this appeal, upon analysis, resolve themselves basically into two. The first is that the Supreme Court in the Government's case found that General Motors had been injured by du Pont's violation of section 7 of the Clayton Act and that the trial judge in the present case failed to give appropriate[12] effect to that find-

6. Gottesman v. General Motors Corporation, D.C.N.Y.1967, 279 F.Supp. 361.

7. Gottesman v. General Motors Corporation, 2 Cir. 1969, 414 F.2d 956. In view of the disposition of that appeal, this court specifically pointed out that it was unnecessary to express any views on the merits of plaintiffs' other arguments in regard to their Sherman Act and breach of fiduciary claims. See 414 F.2d at 965.

8. Gottesman v. General Motors Corporation, D.C.N.Y.1970, 310 F.Supp. 1257.

9. United States v. E. I. du Pont de Nemours and Company, D.C.Ill.1954, 126 F.Supp. 235, on remand, 1959, 177 F. Supp. 1.

10. United States v. E. I. du pont de Nemours and Company, 1957, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057, and United States v. E. I. du Pont de Nemours and Company, 1961, 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318.

11. Gottesman v. General Motors Corporation, D.C.N.Y.1963, 221 F.Supp. 488; 1967, 279 F.Supp. 361; 1970, 310 F. Supp. 1257.

12. The plaintiffs are somewhat ambivalent in their argument as to whether the effect should be conclusive, almost conclusive or prima facie only. The authorities, however, are clear that the effect is to be prima facie only. Hanover Shoe, Inc. v. United Shoe Mach. Corp., 1968, 392 U.S. 481, 484, 489, 88 S.Ct. 2224, 20 L.Ed.2d 1231; Emich Motors Corp. v. General Motors Corp., 1951, 340 U.S. 558, 568, 569, 570-571, 71 S.Ct. 408, 95 L.Ed. 534; Herman Schwabe, Inc. v. United Shoe Machinery Corp., 2 Cir. 1962, 297 F.2d 906, cert. den. 369 U.S. 865, 82 S.Ct. 1031, 8 L.Ed.2d 85.

ing. The second is that, in any event, the plaintiff's additional evidence established the fact of injury and that the trial judge was guilty of clear error in finding that, while du Pont's ownership of stock in General Motors constituted a violation of section 7 of the Clayton Act, the violation did not cause any injury to General Motors. We find no merit in either contention of the plaintiffs.

In support of the first contention the plaintiffs argue that the undisputed facts in the Government's case established not only violation of section 7 of the Clayton Act but also injury to General Motors by reason of such violation and that the trial judge did not give realistic recognition to the latter finding. In support of their contention that the Supreme Court found such injury they point to certain passages from the 1957 and 1961 opinions of that Court which, they urge, constitute such a finding. We have studied these opinions with the greatest care and we cannot agree with the plaintiffs' contention in this regard. The question of injury to General Motors was not raised by the Government in its pleadings, was not involved in the charge of violation of section 7 of the Clayton Act and was, accordingly, neither considered nor resolved by the Court in the Government's case. The statements to which the plaintiffs refer were directed to the Court's determination of the section 7 violation. We think that the Court made it clear that it was not dealing with actual injury when it said that "considerations of price, quality and service were not overlooked" by the officers of both companies and that they acted "honorably and fairly." [13]

In its opinion on the first appeal in this case this court did say, as the plaintiffs point out, that the Supreme Court in its second opinion "apparently regarded its 1957 holding as encompassing not only an antitrust violation but also injury." [14] But we were there referring

---

13. "We agree with the trial court that considerations of price, quality and service were not overlooked by either du Pont or General Motors. Pride in its products and its high financial stake in General Motors' success would naturally lead du Pont to try to supply the best. But the wisdom of this business judgment cannot obscure the fact, plainly revealed by the record, that du Pont purposely employed its stock to pry open the General Motors market to entrench itself as the primary supplier of General Motors' requirements for automotive finishes and fabrics.

"Similarly, the fact that all concerned in high executive posts in both companies acted honorably and fairly, each in the honest conviction that his actions were in the best interests of his own company and without any design to overreach anyone, including du Pont's competitors, does not defeat the Government's right to relief. It is not requisite to the proof of a violation of § 7 to show that restraint or monopoly was intended." [353 U.S. 586, 606–607, 77 S.Ct. 872, 884.]

Upon remand, the District Court for the District of Northern Illinois made the following observation:

"In its opinion the Supreme Court recognized the fact that all concerned in high executive posts in both du Pont and General Motors 'acted honorably and fairly, each in the honest conviction that his actions were in the best interests of his own company and without any design to overreach anyone, including du Pont's competitors.' 353 U.S. 586, 77 S.Ct. 872, 884, 1 L.Ed.2d 1057. The Supreme Court thus accepted the detailed findings of this Court to the effect that in the commercial relations between du Pont and General Motors there was no fraudulent or improper conduct on the part of the officers and directors of both companies, and no overreaching of any kind. Here again, however, the Court concludes that these facts do not in any way mitigate or qualify the duty of this Court to frame a decree that will effectively remove and guard against the effects of the acquisition of the stock which have been held to be offensive to the statute." [177 F.Supp. 1, 14.]

Upon the second appeal by the Government to the Supreme Court, this observation by the trial judge was not rejected as an incorrect interpretation of its first opinion.

14. Gottesman v. General Motors Corporation, 1969, 414 F.2d 956, 964.

to the injury to the public interest [15] which resulted from du Pont's violation of section 7 of the Clayton Act, not to private injury to General Motors. Private injury does not necessarily accompany such a public injury. Indeed, it is possible that such a public injury might result from an antitrust violation by a seller while at the same time the buyer was financially benefited.[16] This court sought to make it clear that it did not regard the decision in the Government's case as controlling on the issue of injury to General Motors when it went on to say:

"In any event, as to all the issues, the trier of fact must make the determination, giving proper weight to the earlier judgment." [17]

Moreover, the Government's judgment did not, as the plaintiffs argue, shift to du Pont the burden of proving that General Motors was not damaged by its violation of section 7 of the Clayton Act. As this court in its opinion on the first appeal stated:

"Of course, plaintiffs cannot rest on a showing of a violation of section 7; they must, as in private actions under other sections of the antitrust laws, prove that they have been injured by the violation." [18]

And also that:

"we are aware that the judgment is only prima facie evidence at best and that plaintiffs have the burden of showing not only antitrust law violation but injury as well." [19]

We are satisfied that the trial judge did not err in holding that the judgment of the Supreme Court in the Government's case, given its full evidentiary value, was not evidence, conclusive or prima facie, of the fact of damage by du Pont to General Motors.

When, as in this case, the question of private injury resulting from an antitrust violation has not been litigated in the Government's case, the burden is on the plaintiff, in its treble damage suit under section 4 of the Clayton Act, to support its claim of resulting damage by the introduction of evidence.[20] This the plaintiffs sought to do in the present case. They relied on evidence of the volume of purchases of automotive fabrics and finishes by General Motors from du Pont and du Pont's markups on the various materials which, they urge, particularize and spell out special damage to General Motors. They argue that du Pont's "entrenched market share" acquired as the result of its stock ownership in General Motors enabled it to extract higher prices from General Motors by means of markups and margins for profits on these products than on the same or comparable products sold to other automotive manufacturers.

The trial judge, on remand, fully considered the issue of fact thus raised. He reviewed the record, giving the judgment in the Government's case the prima facie effect to which it was entitled with respect to du Pont's violation of section 7 of the Clayton Act, and he reconsidered the findings which he had previously made. His conclusion was that his previous findings were correct and he reaffirmed them.[21] In his previous opin-

15. See Brown Shoe Co. v. United States, 1962, 370 U.S. 294, 311–324, 82 S.Ct. 1502, 8 L.Ed.2d 510.

16. In fact, it appears that in the Government's case against du Pont involving the antitrust violation upon which the plaintiffs here rely the Government's original complaint averred that du Pont favored General Motors over the latter's competitors. United States v. E. I. du Pont de Nemours and Company, D.C.Ill.1959, 177 F.Supp. 1, 49.

17. 414 F.2d at 965.

18. 414 F.2d at 961.

19. 414 F.2d at 965.

20. Herman Schwabe, Inc. v. United Shoe Machinery Corp., 2 Cir. 1962, 297 F.2d 906, 909–910, cert. den. 369 U.S. 865, 82 S.Ct. 1031, 8 L.Ed.2d 85.

21. These findings had been made with respect to the injury alleged to be suffered as a result of Sherman Act and fiduciary violations. The trial judge, however, expressly held in his opinion upon remand that they were equally apposite to the

ion [22] the trial judge had fully considered the evidence as to the different automotive finishes (topcoats, undercoats and thinners) manufactured by du Pont under various trade names and the relative qualities of these products, including the difference in cost to General Motors of enamel and lacquer, a point upon which the plaintiffs lay great emphasis. He concluded that

"From all of the evidence, it was General Motors' considered business judgment, well substantiated by the record here, that lacquer was superior to enamel as a topcoat for passenger cars. This business judgment was not affected either directly or indirectly by du Pont's stock ownership in General Motors.

\* \* \* \* \* \*

"No evidence was adduced that any competitive source was foreclosed from obtaining finish business from General Motors or that any competitor could have supplied finishes of the same quality and description, and with comparable service, at a price lower than that paid by General Motors to du Pont. There is no evidence that du Pont, directly or indirectly, influenced the decisions made in any of the steps involved in the purchases of finishes." [23]

The trial judge had also given thorough consideration to plaintiffs' emphasis on the volume of General Motors' purchases of finishes from du Pont, finding that each purchasing division of General Motors acted independently of the other for its own best interest, and stating that "The fact is that merchandise of the same quality and description in a product line was sold by du Pont at the same price to all its customers." [24]

In his previous opinion the trial judge had fully considered the plaintiffs' contentions with regard to du Pont's sale of fabrics to General Motors and the difference in the spread between mill cost and sale prices as compared to the total sales to other automotive manufacturers. He stated that du Pont's differing prices depended on variations in color, finish, range of grade and specification of decorative effects by the purchaser, finding that

"\* \* \* Plaintiffs have not shown comparable purchases of fabrics of like color, finish and grade by other automobile manufacturers, and therefore the difference in spread cannot support a finding sustaining plaintiffs' contention." [25]

And with regard to the sales made to the Fisher Body Division of General Motors, the trial judge found that

"\* \* \* The purchasing agents of Fisher then negotiated competitive prices before making allocations. They exercised unfettered discretion in buying the product best suited for their purposes from the standpoint of price, quality and styling appeal. The purchases were based solely on competitive merit." [26]

All these findings by the trial judge are supported by substantial evidence and we cannot say that they are erroneous, let alone clearly so. We, therefore, may not set them aside. Rule 52(a), F.R. Civ.P.

The plaintiffs' final argument is that the trial judge erred in rejecting their contention that du Pont's antitrust violation breached a fiduciary obligation it had to General Motors. The trial judge, in his first opinion, discussed the plaintiffs' fiduciary claims, in the light

plaintiffs' claims under section 7 of the Clayton Act. 310 F.Supp. at 1260. On the present appeal the plaintiffs have taken the position that in view of du Pont's established and admitted violation of section 7 of the Clayton Act it is no longer necessary on the issue of liability to consider the alleged Sherman Act violations.

22. 279 F.Supp. at 375–381.

23. 279 F.Supp. at 378, 379.

24. 279 F.Supp. at 380.

25. 279 F.Supp. at 381–382.

26. 279 F.Supp. at 383.

of decisions on the subject of common law fiduciary duty, and concluded that even if there was a fiduciary duty it was not breached by du Pont in relation to the purchase of fabrics and finishes.[27] The cases relied upon by the plaintiffs in support of their contention are wholly distinguishable on their facts from the present case. The trial judge found that du Pont had sustained the burden of demonstrating that its transactions with General Motors were scrupulously fair. The plaintiffs have not satisfied us that these findings of the trial judge are erroneous.

The judgment of the district court will be affirmed.

---

27. The trial judge made the following findings:

> "To determine fairness, courts consider the market price of the goods sold if one is ascertainable, whether the corporation received full value in all the commodities purchased, the extent of dominance by the controlling corporation, who initiated the complained of transactions, and more generally whether reasonable and disinterested directors would have assented to the transactions.
>
> "The business relationships growing out of the sale of automotive fabrics and finishes by du Pont to General Motors were completely unrelated to the stock interest that du Pont held in General Motors. These sales and purchases resulted from arm's length transactions under competitive conditions. The prices paid by General Motors were market place prices. The quality of the products and the service that was furnished with the products were equal to if not better than what was available in the market place." (279 F.Supp. at 385.]