Netter, Dowd, Ness, Alfieri & Stern, New York City, for plaintiffs; Richard M. Netter, Henry L. Bayles, New York City, of counsel.

William A. Grier, Edward B. Wallace, New York City, for defendant General Motors Corp.; Frazer F. Hilder, Calvert Thomas, Detroit, Mich., John J. Higgins, New York City, of counsel.

Covington & Burling, Washington, D.C., for defendant E. I. duPont de Nemours & Co.; Daniel M. Gribbon, Harris Weinstein, Washington, D.C., of counsel.

**Callman GOTTESMAN and Paul J. Peyser, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION and E. I. duPont de Nemours & Company, Defendants.**

**Civ. A. No. 121–251 (CMM).**

United States District Court, S. D. New York.

April 12, 1977.

METZNER, District Judge:

Counsel for plaintiffs in this unsuccessful derivative stockholders' action seek an award of $1,000,000 as counsel fees and $345,059.94 for disbursements and expenses. The claim is directed against both General Motors Corporation (General Motors) on whose behalf the antitrust suit was prosecuted, and E. I. duPont de Nemours & Company (duPont), the prime defendant.

The court has received neither a proper affidavit of services nor an itemization of the amount requested as disbursements. *City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2d Cir. 1974). While the court has

extensive knowledge of the litigation, this knowledge only goes to the nature and extent of the legal services rendered, not to the amount and propriety of the claimed disbursements. However, this omission does not affect the determination of the application, which must be denied.

On October 1, 1959, the day following my induction as a judge of this court, I acceded to the request of the then Chief Judge Sylvester J. Ryan to become the Rule 2 judge[1] in what he described as a "fascinating case."[2] Now, nearly eighteen years later, it appears that the end has been reached with the making of this application at the foot of the judgment of dismissal that was entered on January 23, 1976.

The litigation was bitterly fought, as can be seen by the published reports.[3] However, all came to naught when the final judgment after trial dismissing two of plaintiffs' claims was affirmed on appeal, and certiorari was denied.

No tangible benefit has been conferred on General Motors by the institution of this action. No fund exists as the result of counsel's activity to which a fee can attach. Despite this, the court is urged to allow the fee because "Gottesman has indeed been an unusual and challenging case spanning some nineteen years. . . . In view of the particular and unique aspects of this case—which may fairly be considered *sui generis*—we respectfully request that the Court should exercise the broad equitable jurisdiction vested in it and grant plaintiff's application." There is no doubt that the case presented unusual and challenging aspects. There certainly was professional satisfaction for the court and I am sure for the lawyers involved in the litigation. However, the defendants cannot be called upon to pay for such satisfaction.

Applicants urge that the action was instituted in good faith, that it had to be instituted after the government obtained divestiture by duPont of General Motors' stock, that the institution and continuance of the action received judicial approval, that the services rendered benefited General Motors stockholders, stockholders in general, and the general public, and also served a therapeutic corporate purpose.

There is no doubt that the action was started in good faith. In fact, as the Court of Appeals pointed out, the institution of such an action was a foregone conclusion after entry of the government judgment. 268 F.2d 194, 198.

The statement that the court approved the institution and continuance of the action is not quite accurate. Motions to dismiss were denied, and the right of plaintiffs to maintain the action was sustained. Such rulings are not to be interpreted as affirmative approval of the continuance of the lawsuit in the context urged by petitioners.

It is not clear as to what is meant by the contention that each of the various categories of services benefited General Motors' stockholders, stockholders generally, or the general public. I gather that counsel is taking the position that it was necessary to "air" the relationship between General Motors and duPont. Frankly, such an "airing"

1. Rule 2 of the rules of this court, under the master calendar system which was in operation at the time, provided that a complicated case requiring prolonged attention of the court could be assigned for all purposes by the Chief Judge to one of the judges of the court.

2. The Chief Judge was correct in so labelling the case, but I never dreamed that his characterization would include the span of active service of a judge, the death of four of the twenty counsel involved on plaintiff's side, the passage of the tenure of five successive general counsels of General Motors, and the elevation to chief executive officer of duPont of one of its counsel.

3. 171 F.Supp. 661, 268 F.2d 194; 28 F.R.D. 325; 7 Fed.Rules Serv.2d 24a.2, Case 2; 221 F.Supp. 488, *cert. denied,* 379 U.S. 940, 85 S.Ct. 321, 13 L.Ed.2d 351, *rehearing denied,* 382 U.S. 875, 86 S.Ct. 17, 15 L.Ed.2d 118; 222 F.Supp. 342, *cert. denied,* 379 U.S. 882, 85 S.Ct. 144, 13 L.Ed.2d 88; 279 F.Supp. 361, 401 F.2d 510, 414 F.2d 956; 310 F.Supp. 1257, 436 F.2d 1205, *cert. denied,* 403 U.S. 911, 91 S.Ct. 2208, 29 L.Ed.2d 689, *rehearing denied,* 404 U.S. 876, 92 S.Ct. 29, 30 L.Ed.2d 125; *Schiff v. Metzner,* 2 Cir., 331 F.2d 963, cert. denied, 379 U.S. 881, 85 S.Ct. 150, 13 L.Ed.2d 88.

was made by the government in the divestiture suit years before.

Complaint is made that General Motors joined up with duPont to resist plaintiffs' claim. The result of the litigation shows that they properly resisted plaintiffs' claim. If the plaintiffs had been successful in proving that wrongdoing existed, the recovery could well have been astronomical, overshadowing any recovery ever received in any litigation in the history of this country. This could well have justified the expenditure of $345,059.94 for disbursements. However, the finding by this court dismissing the claims after trial was to the effect that duPont's stock control of General Motors did not, in fact, result in injury to General Motors.

Lastly, it is claimed that this action by the plaintiffs served a therapeutic corporate purpose. I know of no change of activity or conduct that was brought about as the result of the institution and prosecution of this lawsuit. If it is the contention that counsel fees are appropriate simply because initially there may have been some justification for bringing the lawsuit, it presents a novel basis for recovery. Where, for example, is the line to be drawn in weighing the propriety of initiating litigation, assuming the existence of good faith, before the court should allow fees for the unsuccessful class representative? A policy of payment based only upon a showing of tangible benefit, not merely an airing of the activity, is the only proper one to be followed.

The trial of this lawsuit was initially limited to automotive fabrics and finishes, with other product lines such as Freon 12 and tetraethyl lead to be left for another day. It was assumed that since automotive fabrics and finishes were the subject matter of the government trial and judgment, the case could be most easily proven, if at all, as to these products. The trial ended in a judgment for defendants. The plaintiffs have stipulated that it would not be in the best interests of General Motors' stockholders to continue either the open claims in this case, or the entire *Schiff* case. The latter case, held in abeyance pending the

determination in *Gottesman*, had been instituted in 1963 in an attempt to overcome a finding in *Gottesman* that the statute of limitations barred the claims in that case from going back beyond May 1959.

There has been some reliance placed on the language in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 389, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). It must be borne in mind that the issue there was whether a fee should be allowed plaintiffs' counsel for establishing a violation of the securities law. A benefit had been conferred by the services even though the exact relief had not been determined. Similarly, in *Kopet v. Esquire Realty Company*, 523 F.2d 1005 (2d Cir. 1975), the court found that the "assessment of such fees to a group of beneficiaries may be predicated on the conferral of benefits which are neither monetary in nature nor explicitly sought on behalf of the entire group." It was found that the corporation benefited from plaintiff's action "both in arresting an existing violation of the law and in the deterrent effect which it may be assumed the action will have on the future conduct of Esquire management." In both of these cases, which employ broad language concerning the right of counsel to compensation from the corporation, there existed an ascertainable benefit to the corporation resulting from plaintiffs' efforts. The only issue in this litigation was whether General Motors had been injured by duPont's actions in the past. The ability to inflict such injury in the future was precluded by the judgment in the government's suit calling for divestiture of duPont's holdings in General Motors.

Finally, there exists neither statutory authority nor any exception to the "American rule" that the prevailing party may not recover attorneys' fees as costs or otherwise. Actually, the basis for the requested compensation in this case is similar to that urged in *Alyeska Pipe Line Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The decision in *Alyeska* completely forecloses any recovery here. The instant action was an antitrust case in which plaintiffs were cast in the role of the

private attorney general. There is no doubt that this role is relied on heavily as a matter of policy in the enforcement of the antitrust laws. However, statutory recovery is governed by Section 4 of the Clayton Act which conditions the allowance on the entry of a judgment in favor of the plaintiff for treble damages. Also, there has not been a common benefit achieved here to justify an allowance under the exception to the general "American rule."

Motion denied.

So ordered.